FRED E. GARLAND *vs.* MAINE CENTRAL RAILROAD COMPANY.

Kennebec.    Opinion July 22, 1893.

85   519
f100  571

85     519
106    452

*Railroad.    Collision at Crossing.    Negligence.*

While railroads are entitled to a clear and unobstructed track for the running of their trains, still, it is their duty to keep a sharp lookout to avoid collisions at their crossings.

When a team has become stalled on, or so near to their track as to be in danger of being struck by a passing train, railway employees must be prompt and energetic in their efforts to stop the train in season to avoid a collision.

In this case, *it was held*, that there was no evidence of negligence; it appearing that the engineer, as soon as he was aware that the team was stuck, employed every means in his power to stop his train in season to avoid a collision, but was unable to do so.

The court find it unnecessary to consider the question of the plaintiff's negligence.

ON MOTION.

This was a motion to set aside a verdict against the defendant in an action to recover damages to the plaintiff's team at a railroad crossing.

The plaintiff in his declaration alleged that "the defendant then and there not in the use of proper care, or giving signals

of warning, so rashly and negligently and carelessly and with such undue and immoderate speed ran one of its engines with the entire train of cars attached thereto across said public street and highway, that," &c.  . . .

The case appears in the opinion.

*Heath and Tuell*, for plaintiff.
*Baker*, *Baker and Cornish*, for defendant.

WALTON, J.  The plaintiff has obtained a verdict for $413.82, against the Maine Central Railroad Company for injuries to a pair of horses and a pair of harnesses and a sled, occasioned by a collision with a passenger train of cars at a highway crossing.

The collision occurred February 12, 1891, at a place known as the Pulp Mill crossing, on the east side of the Kennebec river, in Augusta.  The plaintiff's teamster undertook to drive across the railroad with a pair of horses and a sled and a load of green hemlock logs.  The load weighed probably not less than three tons, and the crossing had no snow on it, and the moment the sled struck the bare planks between the rails, it stuck as fast as if it had been bolted down, and no efforts of the horses — not even with the assistance of four men lifting at the load with pries — could move it further.

While this load of green hemlock logs lay thus stalled directly across the railroad track, one of the regular passenger trains from Bangor came round a curve north of the crossing, and before it could be stopped, it collided with the plaintiff's sled and caused the injuries already mentioned.

The plaintiff claims that this accident was caused solely by the negligence of the railroad company.  He does not admit that there was the slightest want of ordinary care in driving on to the bare crossing with a load of green hemlock logs so heavy that the horses with the assistance of four men could not haul it off, and at the very moment too, when a passenger train of cars was due.  He does not admit that there was the slightest degree of negligence in attempting to drive over the bare crossing with such a load (weighing probably not less than three tons) without first throwing some snow upon it.  He insists that the

collision was caused by the negligence of the railroad company alone, and without the slightest degree of contributory negligence on the part of himself or his teamster.

For the present we will pass over the question of contributory negligence, and consider the question of the alleged negligence of the railroad company.

We concede at the outset that, notwithstanding railway companies are entitled to a clear and unobstructed track for the running of their trains, still, it is their duty to keep a sharp lookout to avoid collisions at their crossings. That if they see that a team has become stalled on, or so near to their track as to be in danger of being struck by a passing train, they must be prompt and energetic in their efforts to stop the train in season to avoid a collision. It is true that all that is required of them in such cases is the exercise of ordinary care. But such a lookout and such efforts are no more than ordinary care. *Purinton* v. *Railroad Company*, 78 Maine, 569.

Assuming such to be the measure of care required of railway companies, we have examined the evidence bearing upon the conduct of those in charge of the train with which the plaintiff's team collided, and we are unable to see that they were in any way in fault. Their train was not moving at an unreasonable rate of speed. The engineer was on the lookout and saw the plaintiff's team as soon as the train had rounded the curve far enough to bring it within the line of his vision. As soon as the engineer became aware that the team was stuck, he employed every means within his power to stop his train in season to avoid a collision, but was unable to do so. That he would be prompt and energetic in his efforts to avoid a collision may very reasonably be presumed. A collision with a load of green hemlock logs might result in very serious consequences. Confronted by such a danger, the presumption that he would act promptly and energetically is very strong. And the evidence leaves no doubt that the engineer did so act. He put on the air-brakes, reversed his engine, and poured sand on the rails. There was nothing else he could do.

It is urged in behalf of the plaintiff that the engineer was neg-

ligent in not sooner comprehending the fact that the sled was stuck. That was a fact not to be ascertained by the sense of sight alone. He could see the load, and he could see that it was not moving. But he could not see that it was stuck and could not move. That was a fact to be ascertained by inference. It could become an ascertained fact only by a process of reasoning. And a principal factor in the process would be the length of time that the load should remain stationary. At first he thought it was moving. A little later, and he saw that it was not moving. A little later still, and he saw the men, standing by, waving their caps. Then the evidence was complete, and the inference that the sled was stuck became a fixed fact in his mind. But all this took time, and the whole transaction occupied but a few moments. After the catastrophe has happened, it is easy to look back and find fault, and point out in how many ways it could have been avoided. But it should be remembered that in sudden emergencies the judgment will not always arrive at correct conclusions in an instant. Men do not often drive on to a railroad track with a load which their horses can not haul off; and we do not think that in this case the engineer was in fault for not sooner comprehending the fact that the plaintiff's teamster had been guilty of such an imprudent act.

Our conclusion is that the alleged negligence of the railway employees is not proved, and that the evidence produced at the trial in the court below was not sufficient to justify the jury in finding that it was proved. And however much we may admire the ability of counsel who can obtain a verdict upon such evidence, we can not for a moment doubt that it is the duty of the court to set it aside.

This conclusion renders it unnecessary to consider the question of the plaintiff's negligence. We rest our decision on the entire absence of proof of the defendant's negligence.

*Verdict set aside.*

PETERS, C. J., LIBBEY, EMERY, FOSTER and HASKELL, JJ., concurred.