BENJAMIN HUMMER, DEFENDANT IN ERROR, v. LEHIGH VALLEY RAILROAD COMPANY, PLAINTIFF IN ERROR.

Submitted July 8, 1907—Decided November 18, 1907.

1. The plaintiff, a milkman, about three o'clock in the morning, at an unfrequented grade crossing of the Lehigh Valley railroad, drove off the railroad crossing and the wheel of the wagon was caught in the tracks. It was very dark and thick. He proceeded to unload his wagon between the rails. While thus engaged he saw the headlight of an approaching train about six hundred feet away, and ran up the track waving a white lantern. The train passed him about one hundred and fifty feet from the crossing. The engine ran five or six feet on to the crossing and struck the rear wheel of the wagon. Both the fireman and the engineer testified that when the plaintiff first waved his lantern the engineer immediately shut off the steam and put on the brakes. The plaintiff testified that the train did not slow down until it passed him about one hundred and fifty feet from the place of the accident. On cross-examination he based this assertion upon the fact that he heard the air-brakes applied as the train passed him. The trial judge ruled that this testimony left it open to dispute whether the train was stopped with reasonable promptness after the plaintiff's warning. *Held,* that the plaintiff's testimony that

the train did not slow down was a mere conjecture; that it proved nothing and made no case to go to the jury; that it did not controvert the testimony of the fireman and the engineer that the steam was shut off and the brakes applied as soon as the signal was seen, about five hundred feet from the crossing; that, therefore, the trial judge erred in not directing a verdict for the defendant.

2. Rule that "in an action for negligence the trial judge is not justified in leaving the case to the jury where the plaintiff's evidence is equally consistent with the absence, as with the existence, of negligence in the defendant," applied and discussed. Reversing 45 *Vroom* 196. The question of the plaintiff's contributory negligence not considered.

In tort. On error to the Supreme Court, whose opinion is reported in 45 *Vroom* 196.

For the plaintiff, defendant in error, *Elmer W. Demarest.*

For the defendant, plaintiff in error, *Collins & Corbin.*

The opinion of the court was delivered by

DILL, J. The writ of error in this case brings up for review a judgment of the Supreme Court, affirming a judgment against the railroad company for damage to a wagon by a freight train on a grade crossing at Linden avenue, in Jersey City.

The question here is whether the trial judge erred in submitting the case to the jury on two questions—*first,* was the company negligent because the engineer did not stop the train as soon as he reasonably might have stopped it after being warned? and *second,* was there contributory negligence on the part of the plaintiff?

We think that the company was not negligent, and hence do not consider the question of the plaintiff's contributory negligence.

At three o'clock in the morning of November 7th, 1905, the plaintiff, a milkman, on his regular route was coming from the northwest on Linden avenue, approaching, at an acute angle, the double-track grade crossing of the Lehigh Valley railroad. The night was very dark and thick, and it

was impossible to see for any distance. There were no lights at or about the crossing.

Linden avenue is an unfrequented dirt lane in the outskirts of Jersey City, a single driveway twelve or fourteen feet wide, while the planked railroad crossing is thirty-four feet wide. The crossing is at a sharply acute angle.

Before the plaintiff reached the crossing he got off the road, and, to use his language: "I think I rather got to the railroad really before I thought I was there, because it all looked alike; it was so dark." He drove on the crossing with the wheels on the left-hand or easterly side off the planking. He endeavored to continue his way across the rails, in the direction in which he was headed, on to the planking, but his horse failed to pull the loaded milk wagon over the rails. He backed and attempted to turn between the tracks back in the direction from which he had come. In so doing the rear wheel on the left-hand side of the wagon became wedged in between the planking and the outer rail of the westbound track.

The plaintiff at this juncture remembered that the regular milk train from the east, going west, was due, and, as he says, not knowing whether the train had gone or not, he started to unload the milk from the wagon to lighten the load and release the wheel. He spent some two minutes unloading, and while thus engaged looked up and saw the headlight on the engine of the approaching train coming around the Chapel avenue curve, opposite the icehouses, about six hundred feet from the Linden avenue crossing. He says that he did not then have time to get the wagon out of the way, but only to get out of the way himself. He picked up his lantern and ran up the track to signal the oncoming train, which passed him approximately one hundred and fifty feet from the crossing.

The train was brought almost to a standstill before it reached the crossing, and the pilot of the engine was on the crossing but a few feet when the train stopped. Nevertheless, it struck the left-hand rear wheel of the wagon.

The plaintiff says that, from the time he saw the headlight of the engine until the collision occurred, less than a minute intervened.

This was the plaintiff's case.

There was no evidence of any specific omission on the part of the train employes to do anything which could reasonably have been done to have brought the train sooner to a standstill. No evidence was offered that the train, under the existing conditions, could have been sooner stopped.

The defendant moved for a nonsuit on the ground that the plaintiff had simply proved that an accident occurred, but that he failed to prove that it was through any fault of the defendant. This motion was denied, and, we think, erroneously.

"Where the evidence is equally consistent with either view, with the existence or non-existence of negligence, it is not competent to the judge to leave the matter to the jury. The party who affirms negligence had altogether failed to establish it. That is a rule which ought never to be lost sight of." *Cotton* v. *Wood, 8 C. B. (N. S.)* 568 (at *p.* 572).

The plaintiff's case derived no additional strength either from the defence or the evidence in rebuttal.

For the defence, by exhibits—scale map and photograph— and by testimony, it appeared that this train from Jersey City, going west, passed under Chapel avenue overhead bridge, one thousand five hundred feet from Linden avenue. For seven hundred and fifty feet thereafter the track ran in a straight line. Then came the Chapel avenue curve, about two hundred and fifty feet long. The icehouses, opposite which the plaintiff first saw the engine headlight, are on this Chapel avenue curve, somewhat less than six hundred feet from the Linden avenue crossing.

The westerly end of this Chapel avenue curve is about five hundred feet from the Linden avenue crossing, and from this point the track is straight for two hundred and fifty feet to the Linden avenue curve, about one hundred feet long, the westerly end of which is one hundred and fifty feet, in an oblique line, from the crossing where the accident occurred.

On the curve nearest Chapel avenue the fireman, from his side of the cab, could see the Linden avenue crossing, but the engineer could not, while on the curve nearest Linden avenue the engineer, but not the fireman, could see the crossing.

The defendant proved that the planking at the crossing was in good order and was thirty-four feet wide.

The train was long and heavy, made up of sixteen cars, mail, express and milk cars, going west on the main westbound track. It was equipped with air-brakes. It was running on schedule time and at its regular speed, twenty-five miles an hour. The night was very dark, and, as the witnesses said, thick and misty, and the ground wet, although it was not raining. At the Linden avenue crossing there was, as a rule, little or no traffic.

When the train was well along on the Chapel avenue curve, having just passed the icehouses, between five hundred and six hundred feet from the Linden avenue crossing, the fireman saw a white light down the track. That the fireman saw this light just after the engine passed the icehouses, where the plaintiff first saw the headlight, demonstrates that the fireman was on the alert and caught the signal as soon as given.

The fireman at once called to the engineer to "see what that man on the track with the lantern wanted." The engineer, although he could not see the lantern at this point on the curve, immediately, as both the fireman and the engineer, testified, shut off the steam and put on the air-brake. On the straight stretch, some one hundred feet further, the engineer saw a white lantern waved on the track. As he came around the short Linden avenue curve, about one hundred and fifty feet from the place of the accident, he passed the plaintiff, by the side of the track, waving the lantern. He then had the steam off and the air-brake on.

As the plaintiff had testified that the night was so dark that everything "looked alike," and that he could not see the road nor the planked crossing even when he got to the railroad, so the engineer testified, that owing to the darkness, it was not until the engine was right on to the crossing that he, for the first time, saw the milk wagon, without a light, its

back towards the oncoming train, the rear wheel only inside the outer rail.

The train was stopped with the pilot of the engine only five or six feet over the crossing, and it was barely moving when the pilot touched the wheel of the wagon, caught and held between the rail and the planking. The wheel was not, therefore, pushed out of the way by the pilot, but was broken.

This was the defendant's case.

The Supreme Court below thought that the cross-examination of the engineer gave rise to a conflict of fact and left open to dispute whether the engineer stopped the train with reasonable promptness after receiving warning of the peril of the plaintiff. We cannot so view it.

The engineer was subjected to a subtle cross-examination. Many questions were misleading because, unintentionally, no doubt, they contained a misstatement of fact.

The engineer, on cross-examination, said that when, on the Chapel avenue curve, the fireman called his attention to the white light, the train was going about twenty-five miles an hour. This was between five hundred and six hundred feet from the Linden avenue crossing. He said that subsequently, on the Linden avenue curve, about one hundred and fifty feet from the crossing, he passed the plaintiff, waving his lantern. Then followed testimony which was subject to comment by the Supreme Court below:

"*Q.* And you say that you were going at about twenty-five miles an hour at that time?"

He had not said he was going twenty-five miles an hour on the Linden avenue curve, but on the Chapel avenue curve, when and where the fireman called his attention to the light, and hence he answered:

"*A.* Yes, sir; when the fireman called my attention to him."

He thus refuted what otherwise might be the inference from an unqualified affirmative answer, that on the Linden avenue curve the train was still going at the rate of twenty-five miles an hour.

"*Q.* And that was four or five cars away from the crossing?" a question, if not with a double meaning, certainly capable of two interpretations. The engineer, however, prevented any misapprehension, and answered:

"*A.* Four or five cars from the crossing to the curve," plainly meaning that it was four or five cars' length from the Linden avenue crossing to the Linden avenue curve.

Counsel, however, still stating facts applicable to the Chapel avenue curve in a question relating to the Linden avenue curve, a subtle method of misstatement of fact, asked:

"*Q.* You say that you shut off the steam and put on the air-brake right away?"

Because he had testified that it was on the Chapel avenue curve, not on the Linden avenue curve, that the steam was shut off and the air applied, the engineer properly answered:

"*A.* I didn't say that.

"*Q.* Did you apply the air-brake?

"*A.* I said I shut off the steam and applied the brake," meaning that he had already done so, precisely as he had testified:

"*Q.* What did you do when you saw the man waving the lantern?

"*A.* I had the brake on."

The engineer maintained, and without contradiction, the integrity of his testimony on the direct, and his cross-examination in nowise gave rise to any conflict of fact which would warrant the submission of the case, on such theory, to the jury.

The plaintiff, in rebuttal, to supply evidence that the engineer did not stop the train as soon as he reasonably might have done after being warned, testified that when he saw the headlight he was excited and started to run up the track, waving his lantern. He said:

"*A.* I saw it coming around the bend, and then I saw they was not going to slow, and I stepped out of the track, and they didn't slacken until they passed me."

This testimony that the train was not going to slow and did not decrease its speed until it passed the plaintiff was

mere conjecture, and based upon the single fact that he heard the air-brakes applied as or after the train passed him, about one hundred and fifty feet from the crossing, as appears by his further testimony:

"*Q.* You couldn't tell whether the engine was slowing, could you?

"*A.* They didn't put on any air until they passed me.

"*Q.* Can you hear the air applied when the train is moving?

"*A.* I certainly did hear it when they did put it on."

Pointedly the next question called for knowledge, and not for an inference:

"*Q.* Did you hear the air-brakes applied?

"*A.* I heard them applied after they passed me."

The last answer is the only fact, as distinguished from mere conjecture, to which the plaintiff testified.

As the Supreme Court of Massachusetts said, under similar circumstances, no legitimate inference can be drawn from the testimony one way or the other, and the attempt to draw an inference could only end in a mere conjecture. *Tully* v. *Fitchburg Railroad Co.,* 134 *Mass.* 499 (at *p.* 502).

The conjecture of the plaintiff that because he heard the air put on as the train passed him therefore it had not been put on before is a mere *"reductio,"* and in the present case *"ad absurdum,"* and especially since the facts established by the plaintiff's own testimony negatived the possibility of his seeing or hearing what the engineer did or did not do on the Chapel avenue curve, five hundred feet away, on that dark night. As contradistinguished from this conjecture, we have the fact that the engineer took such action that this heavily-loaded train of sixteen cars, on a dark and misty night, was brought to a standstill within approximately six hundred feet. The fact that the plaintiff heard the application of the air-brakes as the train passed him, one hundred and fifty feet from the crossing, is but evidence of a continuous or repeated application of the air to the brake.

The plaintiff's testimony is not even up to the standard of the evidence in *Eissing* v. *Erie Railroad Co.;* 44 *Vroom* 343, where the present Chief Justice, in reversing a judgment

where the case went to the jury upon similar testimony, clearly pointed out the difference between a mere conjecture and a statement of fact.

The evidence is purely of a negative character, and its negative character is intensified by the fact, made quite obvious by the testimony, that the plaintiff was not so situated that he could have known what was done by the engineer before the train passed him. His testimony proved nothing, and made no case to go to the jury. _Ellis v. Great Western Railway, L. R._, 9 _C. P._ 551.

The defendant in error insists that the engineer was negligent in not sooner comprehending the fact that the wagon was caught and held by the outer rail at the crossing. Counsel in his brief says: "The testimony of the defendant engineer and the fireman shows that the light from the plaintiff's lantern was seen, and that the train did not stop until part of it had passed over the crossing and struck the plaintiff's wagon." Granted, this merely proves the happening of an accident, but is not proof of defendant's negligence.

The plaintiff says he was not negligent in getting off the road and driving outside the railroad crossing and getting caught between the tracks, because the night was so unusually black and dark that he, driving a wagon, could not see the crossing thirty-four feet wide, and yet he insists that, at the same time and place, and in the same darkness, the engineer was negligent because he did not see the rear end of this unlighted wagon caught upon the track and extending but a few inches over the outer rail, and in time to avoid a collision.

The plaintiff relies on the single fact that the train did not stop until the cowcatcher of the engine ran onto the crossing some five or six feet and struck the rear wheel of the wagon. This of itself is no evidence of negligence. On the contrary, following the reasoning of Mr. Justice Reed, in _Brink v. North Jersey Street Railway Co., ante p._ 219, this fact, that the train was almost at a standstill at the crossing, tends to controvert the theory of negligence on the part of the engineer. Railroads are under no obligation to run trains

under such reduced speed at night that objects may be perceived under the headlight in time to avoid a collision.

That the plaintiff did not have a red light, but only a white light, to signal the oncoming train was unfortunate, but this did not change the character and kind of signal actually given. The white light did not convey to the engineer the same meaning as a red light or other well-recognized signal of danger.

When the fireman first saw the white lantern it conveyed neither to him nor to the engineer a consciousness of the fact that a wagon was caught on the crossing. Nor, when the engine passed the plaintiff on the track with his lantern, did the engineer know what was the danger, or where it was. The view most favorable to the plaintiff is that the engineer received a warning of a danger, unseen and not pointed out. Until he was right upon the crossing nothing indicated to him or told him that there was a milk wagon on this crossing. He was therefore called upon to exercise his judgment, and since he acted upon that judgment it was not negligence nor want of ordinary care on his part, although the judgment proved to be erroneous. *Telfer* v. *Northern Railroad Co.*, 1 *Vroom* 188 (at *p.* 195).

It is manifest that, owing to conditions over which the engineer had no control, he could not ascertain, except by inference, that the wagon was caught on the crossing and was the real danger until the train was so close to the wagon that it was impossible to stop in time to avoid a collision.

The rule is well settled that "where the sole basis of liability is the omission to perform a certain duty suddenly and unexpectedly arising, there ought to be at least a consciousness of the facts which raise the duty on the part of the person who is charged with its performance, and a reasonable opportunity to discharge it." *H. M. & F. Pass. Ry. Co.* v. *Kelley,* 102 *Pa. St.* 115 (at *p.* 120).

The whole transaction, as the plaintiff says, from the time he saw the headlight, picked up his lantern and started up the track to signal the oncoming train, until the engine struck the wagon, occupied less than a minute.

The train, traveling at the rate of twenty-five miles per hour, which is about thirty-six and one-half feet per second, was, at that rate of speed, only about sixteen seconds away from the crossing. The engineer was confronted with a sudden emergency which necessitated his acting upon his judgment rather than upon a knowledge of the actual facts.

The fact that in sudden emergencies human judgment does not always arrive at a correct conclusion, and in an instant, is not evidence of negligence.

The Court of Appeals of New York, in a well-reasoned opinion, said that railroads are not liable for a mistaken exercise of judgment on the part of their employes in an emergency, or for a failure to act with the utmost promptitude and in the right direction when circumstances are such as to afford no time for deliberation. Where an employe of a railroad company is confronted with a sudden emergency, the failure on his part to exercise the best judgment the case renders possible, does not establish lack of care or skill upon his part which renders the company liable. It is not responsible, in such circumstances, even for his error of judgment. *Lewis* v. *Long Island Railroad Co.,* 162 *N. Y.* 52 (at *p.* 62).

The plaintiff offered no evidence that a train of sixteen cars, similar to this, could be stopped, under similar circumstances, at less than the distance this train was stopped.

So far as there was any evidence in the case as to the numerous factors, all of which are variable and upon which depends the distance within which a given train can stop, the evidence was against the plaintiff. The train was a mixed train of sixteen cars, mail, express and milk cars. It was running at twenty-five miles an hour. The condition of the atmosphere was thick and misty, and the ground was wet. The condition of the rail itself, therefore, was greasy and slippery. It was not raining, and therefore the rails were not cleaned off by a rain.

Quite without evidence is the case as to other well-recognized factors. The fact remains that the engineer did stop this train, and under these circumstances, according to his testimony, within a distance of about six hundred feet. The

legal presumption, in the absence of evidence to the contrary, is that he did his duty and stopped the train as soon as practicable.

The plaintiff's theory that the engineer did not put on the brakes until the train was within three or four cars' length of the crossing would necessitate the conclusion that a train of sixteen cars, on a dark night, with greasy rails, and running at twenty-five miles an hour was, and therefore could be, brought to a standstill within the length of three or four cars. This conclusion, necessary to the plaintiff's contention, appeals neither to our reason nor to our knowledge of the subject of car-braking.

*Telfer* v. *Northern Railroad Co., supra,* is applicable to the present case. In that case two young men, driving a horse and wagon, approached a railroad crossing. Before they reached the crossing they were seen by the engineer, and the young men were also apprised of the fact that the train was coming. They stopped a short distance from the track and were seen to stop by the engineer. They then drove onto the track, and at this point the engineer shut off the steam and put on the brakes, but it was too late, and they were struck by the train. The Chief Justice, speaking for this court, said:

"Although the engineer saw the boys approaching the crossing, while yet at such a distance as not to indicate their ignorance of the coming train, it was his right to suppose they did not mean to attempt to cross before the train, and if he acted upon that impression, it was not negligence or want of ordinary caution on his part, although the supposition proved to be groundless."

We find an authority quite in point decided by the Supreme Court of Maine in 1893. There the plaintiff, in driving a loaded team across the railroad at a highway crossing, became stuck on the crossing. The engineer saw the team, and even saw it was not moving, but did not then proceed to stop his train. As soon as he saw that the team could not be moved, he did all he could to stop his train, but it was too late to avoid the collision. It was held that there was no evidence of his negligence; that he was not in fault in not sooner com-

prehending that the plaintiff would haul a load on the crossing he could not haul off. *Garland* v. *Maine Central Railroad Co.,* 85 *Me.* 519.

The plaintiff alleged negligence on the part of the railroad company. He failed to prove any facts from which the judge could say that negligence could be reasonably inferred. In denying the motion for a nonsuit the court left it to the jury to say whether any facts were established from which negligence could be reasonably inferred, as well as the question whether, from these facts, negligence ought to be inferred.

The present Chancellor, when sitting as Mr. Justice Magie and in this court, formulated the rule as to when it is the duty of a trial judge to take a case from the jury. *Newark Passenger Railway Co.* v. *Block,* 26 *Vroom* 605. He cited, with approval, the language of Lord Chancellor Cairns in *Metropolitan Railway Co.* v. *Jackson, L. R., 3 App. Cas.* 193 :

"The judge has to say whether any facts have been established by evidence from which negligence may be reasonably inferred; the jurors have to say whether, from those facts when submitted to them, negligence ought to be inferred."

And he adds:

"It is, in my opinion, of the greatest importance in the administration of justice that these separate functions should be maintained, and should be maintained distinct."

The Lord Chancellor, after pointing out the danger to the administration of justice which arises when a trial judge declines, in a proper case, to take responsibility, but seeks to escape it by submitting the case to the jury, says:

"It would place in the hands of the jurors a power which might be exercised in the most arbitrary manner, if they were at liberty to hold that negligence might be inferred from any state of facts whatever."

We do not hesitate to suggest in this case, quite as strongly as did the Lord Chancellor in *Metropolitan Railway Co.* v. *Jackson, supra,* that the only facts upon which the jury could have founded their verdict were that the defendant was a railroad corporation, and that there was an accident.

The jury found against the railroad company, although the company was really blameless.

The trial court erred in refusing the motion for a nonsuit, and again in denying the motion for a direction of the verdict in favor of the defendant below.

The judgment under review must be reversed and a new trial awarded.

*For affirmance*—None.

*For reversal*—MAGIE, CHANCELLOR, THE CHIEF JUSTICE, GARRISON, SWAYZE, REED, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J.    11.