KATE MURPHY, PLAINTIFF IN ERROR, v. NORTH JERSEY STREET RAILWAY COMPANY, DEFENDANT IN ERROR.

Argued March 10, 1911—Decided June 19, 1911.

1. A carrier of passengers for hire is legally responsible for injuries happening to a passenger from such an accumulation of ice upon its car steps as to cause a passenger, using ordinary care, to slip and fall, if sufficient previous opportunity has been had to remove the source of danger. The duty of the carrier in such regard is not performed simply by appointing servants whose duty it is to keep the car steps in a safe condition, nor is it any excuse that the servants neglected their duty, and where a substantial conflict as to the actual performance of such duties by the servants appears from the evidence, such conflict must be determined by the jury.

2. A material distinction pointed out between the facts influencing the decision of the Supreme Court in the case of *Baker* v. *North Jersey Street Railway Co.*, reported in 48 *Vroom* 336, and those controlling the decision of the case at bar.

3. In an action for injuries to a passenger, testimony of plaintiff that she slipped on material on the platform of the car which "looked like old ice," is not an opinion in its ordinary sense, which is an inference as to what will follow from a given state of facts, but is the observation of an existing condition.

On error to the Supreme Court.

For the plaintiff in error, *Hood & Hood.*

For the defendant in error, *Leonard J. Tynan.*

The opinion of the court was delivered by

VREDENBURGH, J.   In the early winter morning (about seven o'clock) of December 8th, 1904, the plaintiff, a passenger traveling upon the defendant's electric street railway car in Newark, New Jersey, while attempting to alight on her way from the rear platform of the car to the street, stepped with her right foot upon the step next below the platform, and, slipping on the ice which covered the step, fell down heavily backwards, striking her head upon it.   The car was then stand-

ing still, having been stopped at her request in order that she might descend to the street, and she was carefully treading upon the step in making her exit from the car, when her foot slipped from under her upon the ice.

Her present suit is brought to recover damages from the railway company for the injuries (which were serious) sustained by her, and is based, by her declaration, upon charges therein to the effect that the defendant was negligent in suffering the step of the car to be covered with ice, and to be, from that cause, in a condition dangerous to her safety as a passenger obliged to make use of it. At the jury trial of the case in the Essex County Circuit Court the controverted questions were two—the first was simply whether the car step was or was not covered with ice at the time of the accident; and the second was whether the defendant had used due care to inspect and thoroughly clean the step of the car at the car barn previous to the accident.

The testimony of the plaintiff as to the first point, as well as of her witness, John Keener, who saw her fall and helped raise her up after her fall, was positive that when she trod upon the car step it was covered with a solid sheet of flat, smooth ice; the counter testimony of the defendant's witnesses was equally positive that at that time there was no ice upon the step—that only some soft, wet snow was upon it. This conflict of testimony presented nothing more than an ordinary jury question to be settled in the jury box, and certainly did not, as it stood, justify the direction of any verdict by the court.

Regarding the second question, the testimony material for the purposes of this opinion may be fairly summarized as follows: The defendant introduced, among other witnesses, two car cleaners employed by it, Joseph Alsop and Richard Oliver, the men who claimed to have inspected and cleaned on the day of, and before the accident, the particular car in question (numbered 1722). In their examination in chief they stated in effect that they had, at the car barn and before the car had left on the trip in question, inspected and thoroughly cleaned off the ice from the step upon which they heard the plaintiff

had afterwards slipped. But upon their cross-examination, which was directed towards the methods pursued by them in removing ice from the step, and the thoroughness of the cleaning they had actually done to it, the following significant admissions were made by them:

Joseph Alsop was asked:

"*Q*. Was there much ice upon the car?

"*A*. Not much, no.

"*Q*. Where was the ice that was upon the car?

"*A*. Some on the floor, some on the steps.

"*Q*. Front or rear?

"*A*. Both ends, rear and back.

"*Q*. Clear ice? Clean ice?

"*A*. Well, yes, it was clean ice.

"*Q*. Ice covering the entire step?

"*A*. There wasn't so much ice as there was snow, quite a little snow.

"*Q*. But there was some ice, too?

"*A*. Yes, it was mixed in."

Richard Oliver was asked:

"*Q*. You swept off what you could sweep off with a *broom?*

"*A*. Yes, sir.

"*Q*. And the rest you left on?

"*A*. Yes, sir,—what do you mean by the rest of it?

"*Q*. What you could not sweep off with a broom you left on?

"*A*. That wasn't very much.

"*Q*. Is it so that what you could not sweep off with a *broom* you *left* on?

"*A*. Yes, sir."

Under this evidence, as to the cleaning in question, it was open to the jury to say whether the step had been properly cleaned of ice by these witnesses on the morning of the accident.

It should be noted that unless this alleged cleaning at the car barn had removed the ice from the step, the evidence shows it was not done at all prior to the accident. No other or later cleaning of the step was shown to have been made on that day at any time before the plaintiff's fall.

It is the settled rule of law that as against dangers that may reasonably be anticipated, the carrier is bound to exercise a high degree of care in behalf of its passengers in respect to the condition of its car platforms and steps.

The cases hold that carriers of passengers for hire are legally responsible for injuries happening to the passengers from dangers produced by the elements when they have assumed a dangerous form (such as the accumulation of ice upon the car steps so as to cause the passenger using ordinary care to slip and fall) and when sufficient previous opportunity has been had to remove their effects or to remedy the danger; and their duty in such regard is not performed simply by appointing servants whose duty it is to keep the car steps in a safe condition; nor is it any excuse that such servants neglected their duty; and where a substantial doubt as to the actual performance of such duties by the servants appears by the evidence, the question should be settled by the jury. *Weston* v. *New York Elevated Railroad Co.,* 73 *N. Y.* 595; *Shepherd* v. *Midland Railway Co.,* 25 *L. T.* (*N. S.*) 879; *Gilman* v. *Boston and Maine Railroad Co.,* 168 *Mass.* 454.

These principles were recognized by this court in its opinion in the case of *Proud* v. *Philadelphia and Reading Railroad Co.,* 35 *Vroom* 702, 706. While the precise holding in that case, as applicable to trains of cars running upon steam railroads, was, that the carrier was not bound to keep up a continuous inspection (and cleaning) of its car platforms and steps, or to know at each moment the condition of every part of its train, yet a reference to the body of the opinion will show that this court regarded the duty of the carrier in respect to the inspection and cleaning of its car steps and platforms, as not being legally performed unless it is thoroughly done *in fact,* and the opinion in its discussion of the evidence offered upon that head in that case by the carrier, emphasizes the correctness of the position, taken in the present opinion, to the effect that where there is a substantial doubt of such thoroughness of cleaning in fact, a jury question is raised. In this Proud case this court, after a full and careful consideration of the testimony of the defendants' car cleaners, held, that no other reasonably legitimate conclusion could be reached from the evidence than

that the defendants' servants had performed their duty, and that no question in that regard was open to the jury, and therefore the verdict, which awarded damages to the plaintiff for her injuries, was without legal support.

At the close of the evidence in the present case, the learned trial judge took the question of fact from the jury by directing a verdict to be entered for the defendant. The judgment entered thereon, upon error brought by the plaintiff, was affirmed by the Supreme Court, and the correctness of that conclusion is now here for review. In the *per curiam* conclusion of the Supreme Court it was considered that the case was very similar in its facts to the case (decided in the Supreme Court) of *Baker* v. *North Jersey Street Railway Co.,* 48 *Vroom* 336.

In estimating the force to be attributed to this comparison it will be sufficient to point out a material difference which must, we think, have escaped the notice of the latter court. In the Baker case the judgment of the trial court in favor of the plaintiff (which the Supreme Court reversed) was rested largely, if not exclusively, upon the testimony of the plaintiff that the material on the platform of the car upon which she said she had slipped—to use her expression—"looked like old ice." This evidence, the opinion, delivered by Mr. Justice Trenchard, characterized as "at most—mere conjecture" saying that "it proved nothing—and did not justify the submission to the jury of the question whether or not due care had been exercised in cleaning the platform." Citing in support the case of *Hummer* v. *Lehigh Valley Railroad Co.,* 46 *Vroom* 703.

In the case in hand, however, it seems to us that it would be a plain misuse of language to apply either the term, or the idea of "conjecture," to the evidence presented by the plaintiff to the effect that the substance upon the car step was smooth, solid ice. The degree of reliance which a jury would have been justified in placing upon the testimony of the plaintiff and her witness, Keener, that the substance upon the car step was ice, would naturally and properly have been influenced by the opportunities which the circumstances afforded those witnesses for correct observation and test. If the jury believed

the plaintiff, she not only saw, but felt the substance under her foot when she slipped upon it, and when, at her fall, her head came in violent contact with it; and if they believed Keener, he not only saw it, but may have come in close proximity with it when he assisted in raising up the plaintiff after her fall. This testimony reached up to a much higher standard of evidence than came within the criticism of the courts in the cases above cited. Its foundation rested upon knowledge in the proper acceptation of that term, as distinguished from mere conjecture or opinion. Further comparison or elaboration of the distinction between the cases seems to be uncalled for.

In the above comment upon the application of the Baker case to the case in hand, approval of the soundness of the principle there declared, with respect to the competency of the opinion of the plaintiff in that case (above quoted), is not intended to be herein expressed. Its authority seems to be questionable in the light of previous adjudications, such as *Castner* v. *Sliker*, 4 *Vroom* 95, and of the review of this sort of evidence in *Koccis* v. *State*, 27 *Id.* 44; approved in *Clifford* v. *State*, 31 *Id.* 289, and in *Walsh* v. *Board of Education*, 44 *Id.* 647, and *Crosby* v. *Wells, Id.* 798.

See, also, 17 *Cyc.* 98, and cases there cited; *Denver, &c., Railroad Co.* v. *P. Irrigating D. Co.*, 19 *Colo.* 367—such testimony is not an opinion in its ordinary sense, which is an inference as to what will follow from a given state of facts, "but is the observation of an *existing condition.*" *Reynolds* v. *VanBuren*, 31 *N. Y. Sup.* 827; *State* v. *Baldwin*, 36 *Kan.* 10; *Scagel* v. *Chicago Railroad Co.*, 83 *Iowa* 380.

The other errors assigned we think to be without merit, but because of the error assigned to the direction of the verdict, the judgments below should, for the reasons stated, be reversed, and a *venire de novo* awarded.

*For affirmance*—VOORHEES, MINTURN, JJ. 2.

*For reversal*—THE CHANCELLOR, GARRISON, TRENCHARD, BERGEN, BOGERT, VREDENBURGH, CONGDON, SULLIVAN, JJ. 8.