## EXCHANGE BANK et al. v. MOSS.*

### SAME v. DAVIS.

(Circuit Court of Appeals, Eighth Circuit. November 26, 1906.)

### Nos. 2,349, 2,358.

1. TRIAL—INSTRUCTIONS—REFUSAL OF REQUESTS.

It is not the duty of a court to reform a requested instruction and to cast out such parts as render it improper as a whole.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 660, 668, 671.]

2. CONSPIRACY—ACTION FOR CONSPIRACY TO DEFRAUD—EVIDENCE.

Where the petition in an action to recover money alleged to have been obtained from plaintiff by means of a conspiracy between defendant bank and others alleged that such conspiracy covered an extended period of time, both before and after the transaction in suit, and was organized for the purpose of swindling all strangers who could be induced to enter into similar transactions, evidence of acts of the cashier of defendant bank in respect to similar transactions while conducting the business of the bank, or declarations made by him to other persons similarly defrauded tending to show the bank's complicity, whether such acts and declarations were before or after the transaction in issue, are admissible to establish the guilty intent and motive of the bank in the transaction involved in the case on trial.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Conspiracy, § 25.]

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Southwestern Division of the District of Missouri.

W. R. Robertson (A. E. Spencer, on the briefs), for plaintiffs in error.

Hiram W. Currey (Willard W. Padgett, on the brief), for defendants in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge. These writs of error challenge judgments obtained by Moss and Davis in actions brought by them against the Exchange Bank and James P. Stewart to recover money of which they were defrauded at Webb City, Mo., by means of pretended foot races. The actions were consolidated for purpose of trial upon the authority of section 921, Rev. St. [U. S. Comp. St. 1901, p. 685], and were tried to a jury, which returned verdicts in favor of the plaintiffs. The complaint of each plaintiff was that he was a victim of a conspiracy between the bank, Stewart, its cashier, Boatright, and others, to entice strangers to Webb City and there to swindle them out of their money by false and fraudulent pretenses. The cases are like that of Stewart v. Wright (decided at the last term) 147 Fed. 321. If there is any noteworthy difference, it consists in more ample evidence in the records before us of the complicity of the defendants. Therefore neither the facts in detail nor the principles of law applicable to the cases in their general aspects need be stated here.

Some matters, however, that occurred during the trial, require notice. Two witnesses, Mantey and Wright, who were also victims of

* Rehearing denied January 10, 1907.

the same swindling organization, described their transactions with the bank and narrated their conversations with James P. Stewart the cashier, and it appeared that their experiences were similar to those of the plaintiffs. The defrauding of the plaintiff Moss occurred April 14th, of plaintiff Davis on August 2d, of witness Mantey the latter part of August, and of witness Wright September 6th—all in the year 1901. It will thus be perceived that the witnesses were allowed to testify to matters that occurred after the transactions charged in the petitions. The defendant bank asked the court to instruct the jury "that none of the acts or declarations of any of its officers or agents, made after the transactions charged in either of these consolidated cases was closed, would bind these defendants." The instruction was refused, and each of the defendants excepted. It is to be noted that the instruction asked by the bank was directed against subsequent acts and declarations generally, without any indication of their character, and also that it was not so framed as to be for the protection of the bank alone, but extended to and embraced its codefendant, James P. Stewart. In one of its phases the instruction may be read as follows:

"None of the acts or declarations of James P. Stewart, the cashier of this bank, made after the transactions with the plaintiffs were closed, can bind him, the said Stewart."

As a proposition of law this is objectionable. As to Stewart personally, it was immaterial when his acts and declarations occurred, if they related to the transaction out of which his liability arose. For this reason, if for no other, the entire instruction was properly refused; for it is not the duty of a trial court to reform a requested instruction and to cast out such parts as render it improper as a whole. It is also to be observed that the instruction requested reads that the subsequent acts and declarations would not bind the defendants. If it was meant by this that such acts and declarations would not be conclusive, it is sufficient to say that the court instructed the jury that the evidence of subsequent transactions was received as tending to show the intent of the defendants in doing what they did. This was made plain at the trial. There was in the case no assertion or suggestion of a conclusive effect of any such acts or declarations. But it was probably the design of the instruction to challenge the admissibility against the bank for any purpose of testimony concerning other similar, but subsequent, transactions, such as those with Mantey and Wright. Assuming that to be a proper method of attacking evidence previously received during a trial, we are yet of the opinion that the trial court was right. It was alleged in the petitions that on the days the plaintiffs were defrauded, and for a long time prior and subsequent thereto, the bank, Stewart, Boatright, and others conspired and confederated for the purpose of swindling strangers who were enticed to the city where the bank was located. The charge was of an organized scheme to defraud all whom they could, that it was systematically pursued, and covered an extended period of time. The proof received was in harmony with the theory of the pleadings, and some of the victims who lost their money before the plaintiffs and others afterwards were allowed to

testify to the participation of the defendants and the similarity of the methods employed. It was important in the actions on trial to discover the motive of the defendants, whether what they did at the time in question was the casual conduct of innocent parties intent upon their own lawful affairs, or whether it was inspired by the fraudulent purpose of assisting in the spoliation. It is the settled rule that in such a case evidence of similar acts at other times is admissible. The theory of the rule is that a succession of like instances tends to illustrate the character of the act under investigation and to negative innocence in the particular case. It is especially applicable where there is a charge of complicity in a scheme to defraud pursued as a vocation. Such a scheme is naturally conceived in secrecy, and the part of the defendant may be the performance of some act which furthers the accomplishment of the unlawful design, but which, when isolated from that which preceded and followed, may bear the aspect of innocence. Yet proof of a recurrence of similar acts in other cases where like frauds were perpetrated may be persuasive proof of a guilty purpose and so disclose the true character of the whole. The rule applies as well to corporations as to individuals, and therefore the acts and conduct of a corporation in collateral instances that may be shown in evidence must necessarily be the acts and conduct of its officers and agents in the course of the corporate business and of their employment. A corporation can speak and act in no other way.

In the application of the rule there is no distinction between those acts that were committed before and those that were committed after the one involved in the case on trial. The latter may be as significant of the intent of the defendant in the particular case as the former, and that is the quality which justifies the admission of the evidence. It is sometimes said that the collateral instances, evidence of which is admissible, are those that occurred at or about the time of the one in question, yet in practice the proximity in point of time is largely left to the discretion of the trial court. The same is true of the degree of similarity. There are cases in which such evidence was held admissible, though it related to acts preceding the one in question by several years. As was observed by the Circuit Court of Appeals of the Sixth Circuit in Mudsill Min. Co. v. Watrous, 9 C. C. A. 415, 61 Fed. 163:

"Remoteness in point of time may weaken their evidential value, but will not justify exclusion."

The doctrine announced is well illustrated in the following cases:
In Wood v. United States, 16 Pet. 342, 10 L. Ed. 987, there was a question whether fraud had been practiced upon the customs revenue law by undervaluing importations. Evidence was received of other similar undervaluations, some of which occurred before and others after those directly involved. Concerning the general rule, Mr. Justice Story, in delivering the opinion of the court, said:

"The question was one of fraudulent intent or not; and upon questions of that sort, where the intent of the party is matter in issue, it has always been deemed allowable, as well in criminal as in civil cases, to introduce evidence of other acts and doings of the party, of a kindred character, in order to illustrate or establish his intent or motive in the particular act directly in judg-

ment.  Indeed, in no other way would it be practicable, in many cases, to establish such intent or motive, for the single act, taken by itself, may not be decisive either way; but, when taken in connection with others of the like character and nature, the intent and motive may be demonstrated almost with a conclusive certainty."

And of the specific objection to the evidence of the later occurrences he said:

"The other objection has as little foundation; for fraud in the first importation may be as fairly deducible from other subsequent fraudulent importations by the same party as fraud would be in the last importation from prior fraudulent importations.  In each case the quo animo is in question, and the presumption of fraudulent intention may equally arise and equally prevail."

Butler v. Watkins, 13 Wall. 456, 20 L. Ed. 629: Butler sued Watkins and an English company of which he was managing agent to recover damages for fraudulently pretending in a series of negotiations that the company would conclude an arrangement for the manufacture and sale of certain articles under a patent which Butler held; the real purpose, as alleged, being to keep him by protracted negotiations from beneficial use of his invention during the season.  No contract was concluded between the parties, and Butler lost the season.  The charge in the petition was not upon contract, but for fraud in leading plaintiff to believe that a contract would be made.  The defendants prevailed in the trial court.  The jury were charged that if the corporation never gave any authority to Watkins to assent in its behalf and in its name to the proposal or to the draft of agreement submitted by Butler, and never sanctioned the same as a corporate act, the suit could not be maintained against it.  The Supreme Court said, however, that, if it was meant by this that no suit upon the contract could be maintained, the instruction was correct; but it could not have been so understood by the jury, as no such question was before them.  The court observed:

"It does not follow, because the corporation never authorized or sanctioned a contract, that they may not be responsible for such a fraud as was alleged in the petition."

At the trial evidence offered by the plaintiff of a similar deceit practiced by Watkins and his company was rejected.  This was held to be error.  The Supreme Court said:

"Deceit in effecting such a purpose lay at the basis of the action.  But how can such a purpose be shown when it has not been avowed?  Actual fraud is always attended by an intent to defraud, and the intent may be shown by any evidence that has a tendency to persuade the mind of its existence.  Hence, in actions for fraud, large latitude is always given to the admission of evidence. If a motive exist prompting to a particular line of conduct, and it be shown that in pursuing that line a defendant has deceived and defrauded one person, it may justly be inferred that similar conduct towards another, at about the same time and in relation to a like subject, was actuated by the same spirit.  If, therefore, it be true that in the spring or early summer of 1868 the defendant had similar negotiations with Wailey respecting his cotton tie, and conducted towards him deceitfully in order to keep his tie out of the market that year, the fact tends to show that in their conduct toward the plaintiff there was the same animus, and that they had the same object in view.  That the evidence offered was admissible for that purpose is abundantly proved by the authorities."

The general rule also found expression in Lincoln v. Claflin, 7 Wall. 132, 19 L. Ed. 106, a case of fraudulently obtaining plaintiff's property through combination and prearrangement upon false and fraudulent representations; in Castle v. Bullard, 23 How. 172, 16 L. Ed. 424, where commission merchants were charged with fraudulently selling plaintiff's property entrusted to them to irresponsible parties; and in Insurance Company v. Armstrong, 117 U. S. 591, 6 Sup. Ct. 877, 29 L. Ed. 997, where the question was whether a life insurance policy secured at the instance of an assignee was with intent on his part to cause the death of the assured. In all of these cases proof of similar conduct at other times was admitted. In Moore v. United States, 150 U. S. 57, 60, 14 Sup. Ct. 26, 37 L. Ed. 996, the court held that where the question relates to the tendency of certain testimony to throw light upon a particular fact, or to explain the conduct of a particular person, there is a certain discretion on the part of the trial judge which a court of errors will not interfere with, unless it manifestly appear that the testimony has no legitimate bearing upon the question at issue and is calculated to prejudice the accused in the minds of the jurors.

In Dow v. United States, 27 C. C. A. 140, 82 Fed. 904, officers of a national bank and a depositor were charged with willful misapplication of funds with intent to injure and defraud the bank. Evidence of prior transactions was received. The court held that, where the issues involved the intent with which certain acts were done, a trial court is justified in giving a reasonably wide latitude to the introduction of evidence tending to show it.

Bacon v. United States, 38 C. C. A. 37; 97 Fed. 35: An officer of a national bank was charged with making a false report of its condition, with intent to injure and defraud the bank and to deceive any agent who might be appointed by the comptroller to examine its affairs. Other reports containing false statements made during the preceding 18 months and testimony that his attention was directed to them 4 months before the commission of the act charged was held by this court to be admissible on the question of defendant's fraudulent purpose.

In Mudsill Min. Co. v. Watrous, 9 C. C. A. 415, 61 Fed. 163, there was a suit to rescind the sale of a silver mine on the ground of fraud. It was charged that samples of ore taken from the mine had been "salted" to induce complainant to purchase. Evidence was admitted to show that defendant had "salted" samples used in prior negotiations with other persons for the sale of the same mine. One of these instances occurred about three years before.

Penn. Mut. Life Ins. Co. v. Trust Co., 19 C. C. A. 286, 72 Fed. 413, 38 L. R. A. 33: Upon the question of intent with which an untrue answer in an application for insurance was made, it was held that evidence of similar answers in other applications made within three months thereafter was competent. The court said:

"But it is suggested that the fact that the instances sought to be proven were subsequent to the instance in issue destroys their relevancy, because the fraudulent intent present in them might have been formed after an innocent mistake. This possibility, of course, affects the probative force of these

subsequent instances to show fraud; but we do not think it makes them inadmissible."

In Spurr v. United States, 31 C. C. A. 202, 87 Fed. 701, the collateral transactions of which evidence was received to show defendant's intent in certifying certain checks as a bank officer extended back more than six years. It was said:

"The objection that the collateral transactions were too remote is not tenable. It goes only to the weight of the testimony. The period of time within which the matter offered to establish the guilty purpose must have occurred to permit of their admission is largely discretionary with the court."

Complaint is also made of the admission of the testimony of other witnesses than Mantey and Wright upon the same grounds. The dates of the occurrences which some of them related as set forth in the brief of counsel do not correspond with the dates in the record; but, assuming that he is correct, the contentions are disposed of by what has already been said.

It is contended that the trial court erred in permitting to be read in evidence the cross-examination of Joseph C. Stewart, the president of defendant bank, as contained in a bill of exceptions in another case of the same character previously tried in a state court. It was admitted that the document was the bill of exceptions. The part sought to be read was proved to be a true transcript of the original stenographic notes of the cross-examination of Joseph C. Stewart. This was shown by a witness who was the official stenographer at the time and who was prepared to read from his notes. Defendant's counsel said he made no point that the reading should be from the notes, instead of from the transcript. The objection was to the cross-examination as a whole. Joseph C. Stewart was at the time a defendant in the cases then on trial, though afterwards discharged by the court at the close of the evidence. We see no error in this.

The remaining assignments of error do not require special mention. Some are disposed of by the opinion in Stewart v. Wright (C. C. A.) 147 Fed. 321, and such of the others as are set forth, identified, and discussed in accordance with the rules have been examined and found untenable.

Affirmed.

SANBORN, Circuit Judge (dissenting). The plaintiffs in these cases, as did the plaintiff in Stewart v. Wright (C. C. A.) 147 Fed. 321, have recovered judgments for moneys they lost in gambling transactions which involved their own moral turpitude, which were violative of the general laws of public policy of the nation and state, and in which they knowingly engaged for the purpose of defrauding others. For the reasons stated in my dissenting opinion in that case, I am unable to concur in the affirmance of these judgments. I think they should be reversed.