SEEBACH v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. November 15, 1919.)

No. 5360.

1. CONSTITUTIONAL LAW ⬅90—RIGHT OF FREE SPEECH NOT A RIGHT TO HAMPER WAR.

The constitutional guaranty of right of freedom of speech does not warrant one in exercising such right in time of war in such a manner as to destroy the nation or hamper military operations.

2. ARMY AND NAVY ⬅40—VIOLATION OF ESPIONAGE ACT.

Statements made by accused during the World War attacking the draft, and suggesting to registrants that others were going to refuse to go to war, together with the application of insulting epithets to one who had enlisted for military service, amount to violations of Espionage Act, § 3 (Comp. St. 1918, § 10212c), being attempts to cause insubordination, disloyalty, and refusal of duty in the military forces.

3. CRIMINAL LAW ⬅1159(2, 3, 4)—CONSIDERATION OF EVIDENCE ON APPEAL.

On writ of error to review a conviction, the appellate court will not weigh conflicting evidence or determine credibility of witnesses, and will uphold the verdict, if supported by substantial evidence.

4. CRIMINAL LAW ⬅1159(2)—IMPEACHMENT OF VERDICT BY RECOMMENDATION TO LENIENCY.

That the jury, which convicted accused of violating Espionage Act, § 3 (Comp. St. 1918, § 10212c), recommended leniency, will not establish on appeal that there was no substantial evidence to support the conviction.

5. WITNESSES ⬅337(6)—IMPEACHMENT AS TO OTHER OFFENSES.

In a prosecution for violating Espionage Act, § 3 (Comp. St. 1918, § 10212c), where defendant denied having made statements similar to those set forth in the indictment, evidence of such statements was admissible as impeaching evidence.

6. CRIMINAL LAW ⬅371(1)—EVIDENCE OF OTHER OFFENSES AS SHOWING INTENT.

In a prosecution under Espionage Act, § 3 (Comp. St. 1918, § 10212c), where it was contended that accused made statements with intent to cause insubordination and refusal of duty in the military forces, evidence of similar statements was admissible in chief on the question of intent.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. CRIMINAL LAW ⊝⟶684—ADMISSION ON REBUTTAL OF EVIDENCE ALSO ADMISSIBLE IN CHIEF.

Where evdence was admissible in chief as well as in rebuttal, the fact that it was admitted in rebuttal is not reversible error.

8. ARMY AND NAVY ⊝⟶40—CAUSING INSUBORDINATION AMONG DRAFT REGISTRANTS; "MILITARY FORCES."

Those who had registered under the Draft Act of May 18, 1917, are part of the "military forces" of the United States, within Espionage Act, § 3 (Comp. St. 1918, § 10212c), denouncing the offense of attempt to cause insubordination and refusal of duty in the military forces.

[Ed. Note.—For other definitions, see Words and Phrases, Military Forces.]

9. ARMY AND NAVY ⊝⟶40—ATTEMPT TO CAUSE INSUBORDINATION.

A charge in a prosecution for attempting to cause insubordination, etc., of the military forces in violation of Espionage Act, § 3 (Comp. St. 1918, § 10212c), which used the term "intent to cause insubordination," etc., as the equivalent of willfulness, is not objectionable.

10. CRIMINAL LAW ⊝⟶304(2), 814(2)—JUDICIAL NOTICE.

In a prosecution for violation of Espionage Act, § 3 (Comp. St. 1918, § 10212c), the court may take judicial notice that the United States was at war during the times covered by the indictment, and may so charge the jury.

11. CRIMINAL LAW ⊝⟶767—INSTRUCTIONS AS TO APPLICATION OF LAW TO FACTS.

Where the evidence upon any issue is clear and uncontradicted, presenting a question of law, the court may, without usurping the functions of the jury, instruct them as to the principles applicable to the case made by such evidence, and this rule applies especially to facts judicially noticed.

In Error to the District Court of the United States for the District of Minnesota; Wilbur F. Booth, Judge.

John C. Seebach was convicted of violating the Espionage Act of June 15, 1917, and he brings error. Affirmed.

H. V. Mercer, of Minneapolis, Minn. (W. N. Carroll, of Minneapolis, Minn., and Arthur E. Arntson, of Red Wing, Minn., on the brief), for plaintiff in error.

Alfred Jaques, U. S. Atty., of Duluth, Minn.

Before HOOK and CARLAND, Circuit Judges, and YOUMANS, District Judge.

HOOK, Circuit Judge. Seebach was convicted of willful attempts to cause insubordination, disloyalty, and refusal of duty in the military forces of the United States when the United States was at war, contrary to section 3, tit. 1, of the Espionage Act of June 15, 1917 (40 Stat. 217, c. 30 [Comp. St. 1918, § 10212c]). The three counts of the indictment, under each of which there was a conviction, severally charged that the attempts were made by statements, counsel, and advice to three young men who had theretofore registered under the Draft Act of May 18, 1917 (40 Stat. 76, c. 15), as follows:

To Harry Olson—"I do not think that the draft is right, to take the young men from this country and send them to another country, to protect the land of England and France. Just think of sending the young men of this country to protect another country. They will go down to the bottom of the sea 20,000 at a time. I would rather see my son Carl shot than go to war against

Germany. How did you come out in the draft? Are you going, if you are called?"

To Alf G. Nelson—"Do you know that a lot of the boys (meaning soldier boys) are going to refuse to go to France? The government cannot compel them to go."

To Henry D. Reitman, summarized from a conversation—"Are you the Reitman boy that enlisted? What did you do that for? Don't you know you are a damn fool to do that? Don't you know Germany is going to win this war? Germany has enough resources and men to win the war. (Reitman: "Why, if you are so strong for Germany, why don't you move over there?") No; no; that is not it. I am for America. I hope every American citizen who has bought Russian bonds will lose every cent he invested."

[1, 2] The right of free speech in time of war and the tendency of words spoken or written to affect injuriously the military preparations and operations of the government have been so often considered by the courts that an extended discussion of the sufficiency of the present indictment is unnecessary. Time, place, and circumstance have everywhere much to do with the quality of human conduct, and this is true of the exercise of rights under the Constitution. The Constitution contains no invitation to destroy the fundamental structure of the government, to frustrate its duly ordered operations, or to lend aid to the public enemies. When the nation is at war, its very existence is in the scales, and the freedom of action and speech of the individual is qualified accordingly. If this were not so, each one might determine for himself the validity or force of public statutes for the general safety; there could even be no such crime as treason. The tendency of the language above quoted, when addressed to men in the military service during the time mentioned, to cause insubordination, disloyalty, and refusal of duty, is obvious. An indictment which states that the language was uttered in willful attempt to cause that result charges an offense against the statute.

[3, 4] Much of the argument of counsel is addressed to the evidence. The question at the trial of a criminal case is whether the guilt of the accused has been shown beyond a reasonable doubt. Upon conviction and appeal it is whether the verdict below was supported by substantial evidence. Humes v. United States, 170 U. S. 210, 18 Sup. Ct. 602, 42 L. Ed. 1011. The appellate court does not weigh conflicting testimony or the credibility of witnesses. The verdict here clearly stands this test. The recommendation of leniency by the jury is argued as impairing the effect of the evidence against the accused. But, if we could consider it, such a recommendation would seem to proceed upon the assumption of guilt, not of innocence. We cannot know what other considerations induced it, nor say that the discretion of the trial court invoked by the recommendation was not duly exercised.

[5-7] Evidence that the accused made statements to other persons similar to those set forth in the indictment was received in rebuttal, after he had denied them. It was proper for impeachment. Furthermore the evidence would have been admissible in chief to show intent. Exchange Bank v. Moss, 79 C. C. A. 278, 149 Fed. 340. Being relevant for that purpose, admission in rebuttal instead of in chief was not

reversible error. Goldsby v. United States, 160 U. S. 70, 16 Sup. Ct. 216, 40 L. Ed. 343.

[8-11] It appeared without dispute or contradiction at the trial that the three young men named in the indictment had registered in accordance with the Draft Act of May 18, 1917. The trial proceeded upon that assumption, and the court in charging the jury said that they were therefore in the military forces of the United States, within the meaning of section 3 of the Espionage Act. An exception was taken to this conclusion, but it was correct. See Debs v. United States (March 10, 1919) 249 U. S. 211, 39 Sup. Ct. 252, 63 L. Ed. 566. Though the above was the only exception taken, counsel extends the argument to other parts of the charge. Passing the failure to direct the attention of the trial court to them, we see no merit in the criticisms. The court correctly defined the term "willfully" as used in the Espionage Act. Elsewhere in the charge it used intent to cause insubordination, etc., as equivalent to willfulness. This was right. Chicago, B. & Q. R. Co. v. United States, 114 C. C. A. 334, 194 Fed. 349. It is difficult to see how the attempt was not willful, if the result was intended and the means employed reasonably calculated to attain it.

Complaint is made that the court took judicial notice that the United States was at war during the times covered by the indictment. So far as judicial notice is concerned, see United States v. Hamburg-American Co., 239 U. S. 467, 36 Sup. Ct. 212, 60 L. Ed. 387; Louisville Bridge Co. v. United States, 242 U. S. 409, 37 Sup. Ct. 158, 61 L. Ed. 395; Oetjen v. Central Leather Co., 246 U. S. 297, 38 Sup. Ct. 309, 62 L. Ed. 726. Judicial notice having been properly taken of a fact not embracing the entire issue made by the plea of not guilty, it was not necessary to submit it to the decision of the jury. In effect it became a matter of law for the court to instruct them.

"It has long been the settled doctrine of this court that the evidence before the jury, if clear and uncontradicted upon any issue made by the parties, presented a question of law, in respect of which the court could, without usurping the functions of the jury, instruct them as to the principles applicable to the case made by such evidence." Rosen v. United States, 161 U. S. 29, 16 Sup. Ct. 434, 480, 40 L. Ed. 606.

This especially applies to facts judicially noticed. Nothing more in the case requires attention.

The sentence is affirmed.