The **UNITED STATES** of America,
Plaintiff-Appellee,

v.

**Charles B. GRADY,** Defendant-
Appellant.

No. 11204.

United States Court of Appeals
Seventh Circuit.

June 28, 1955.

Rehearing Denied Aug. 26, 1955.

George L. Turner, Livingston E. Osborne, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., Joseph E. Tobin, John Peter Lulinski, Asst. U. S. Attys., Chicago, Ill., for appellee.

Before FINNEGAN, LINDLEY and SCHNACKENBERG, Circuit Judges.

FINNEGAN, Circuit Judge.

Congress amended the Grain Futures Act,[1] June 15, 1936, by passing the Commodity Exchange Act[2] for the purpose of preventing and removing obstructions and burdens upon interstate commerce in grains and other commodities by regulating transactions therein on commodity futures exchanges. This 1936 legislation, and subsequent further amendatory provisions, enlarged governmental control over commodity exchanges in a fashion comparable to supervision of security exchanges. Grady, defendant, has been tried three times under an eight count[3] information charging violations of §§ 4b, 4d of the Commodity Exchange Act, 49 Stat. 1491, 1493, 1494 (1936), as amended, 7 U.S.C.A. §§ 6b(A), 6b(B), 6d (2), for his alleged conduct at Chicago, Illinois, during a period running roughly between February, 1946 and November, 1947. His first trial terminated December 8, 1949, in a jury's disagreement, and later we reversed. United States v. Grady, 7 Cir., 1950, 185 F.2d 273 his conviction by another jury, remanding the cause for a new trial, which resulted in the judgment entered June 3, 1954 now before us on review. Sentenced to three months imprisonment on each count of that information, defendant has concurrent sentences amounting to two years imprisonment and a fine totalling $5,000, plus costs under the current judgment.

### I. Pleadings.

Basically, each count in the information describes Grady as a member of the Chicago Open Board of Trade, "a duly designated contract market under the Commodity Exchange Act." The eight counts fall into three groups: (1) Counts 1, 4 and 7 are grounded on 7 U.S.C.A. § 6b(A) and charge, in substance: that defendant received and accepted funds, in stated amounts, from named individuals "to margin, guarantee and secure transactions in commodities for future delivery, to be executed on the Chicago Open Board of Trade for the account and benefit" of such persons "which * * * contracts may have been used for hedging or determining the price basis of transactions in interstate commerce in such commodities, and reported to" these named persons "that such transactions had been executed for" their accounts and benefit; that defendant unlawfully cheated and defrauded these persons in that no such transactions had been executed and that defendant converted the sums of money to his own use, (II) Violations of 7 U.S.C.A. § 6d(2) are spelled out in counts 2, 6 and 8 which vary from the three counts just described in that defendant is alleged to have received stated sums for named persons "to margin, guarantee and secure transactions in commodities for future delivery to be executed on the Chicago Open Board of Trade * * * and unlawfully failed to treat and deal with said funds as belonging to" the customers named, and (III) the other two counts, numbered 3 and 5, charge defendant with having received stated funds from named individuals "to margin, guarantee, and secure purchase of" corn and oats "for future delivery to be executed on the Chicago Open Board of Trade for the account and benefit" of these persons. Counts 3 and 5, bottomed on 7 U.S.C.A. § 6b(B), further allege that these "contracts may have been used for hedging or determining the price basis of transactions in interstate commerce in such commodity." As to the person named in count 3, it is charged defendant made false reports that these transactions had been executed when in fact no such purchases had been made. Count 5 varies from the third count, only in that it is there further alleged that

---

1. 42 Stat. 998 (1922), 7 U.S.C.A. §§ 1–17.

2. 49 Stat. 1491 (1936), 7 U.S.C.A. §§ 1–12. Amendments to the Act were made, viz. 52 Stat. 205 (1938), 54 Stat. 1059 (1940) amending § 2(a), 7 U.S.C.A. § 2, and 68 Stat. 913 (1954), 7 U.S.C.A. § 2.

3. Count 9 of the information was dismissed December 7, 1949.

defendant made "a false written report and statement to" the individual named "with regard to the disposition or execution of" the orders or contracts in her account wherein she was shown to have "a credit balance of $1,000 and a long position of 10,000 bushels of oats for future delivery, whereas, in truth and in fact" that person "had no position in the oats futures market and no credit balance in her" account, defendant having converted her funds to his own use.

Urging five grounds to support his challenge of the information, defendant interposed a motion to dismiss it, but only the following points, taken from that motion, need be reproduced:

"1. That Sections 6b and 6d of Title 7, United States Code are invalid and unconstitutional in that they delegate to 'contract markets' the power to create and designate criminal offenses in that said 'contract markets', by the adoption of rules, may designate what contracts of sale are subject to the said statutes.

"Said Sections are also invalid and unconstitutional and fail to afford due process of law in that they are so vague and unintelligible that the persons sought to be governed by them cannot determine what conduct shall constitute a criminal offense."

"4. Count 3 and all other counts of the information are insufficient in that they state 'which said contracts may have been used for hedging or determining the price basis of transactions in interstate commerce in such commodity', and said phrase, as used, is so vague and uncertain as to fail to inform the defendant of the nature of the charge against him. That is, the defendant is unable to determine whether the contracts contemplated in the various counts were or were not used in the manner described.

"Said count 3 further fails to allege that the offense occurred in connection with an order to make or the making of a contract of sale of any commodity."

Defendant's motion was denied and in this court he again asserts those constitutional questions for disposition. Motions for judgment of acquittal, new trial and in arrest of judgment were denied. Careful consideration of all points sponsored by defendant, as constituting grounds for reversal, leads us to the inescapable conclusion that they are all tenuous and the judgment must be affirmed. But we selected several of the broader questions, for mention in this opinion, and now treat with them in detail.

## II. Constitutional Aspects of the Information.

■■ Vagueness and unintelligibility, coupled with alleged unlawful delegation of legislative power form the two prongs of defendant's attack launched against this criminal information. Defendant contends the sections of the Act, under which he was prosecuted, contravene Article 1, section 1, of the Fifth Amendment of the Constitution. But we think Board of Trade of Kansas City v. Milligan, 8 Cir., 1937, 90 F.2d 855 and our opinion, reported as Moore v. Chicago Mercantile Exchange, 7 Cir., 1937, 90 F.2d 735 go far toward cutting ground from under defendant's contentions in this area. Indeed Grady's thin argument clothed with the words "interstate commerce" is disposed by Judge Evans' observation in the Moore case, 90 F.2d 740:

"Our duty is not to locate the stakes that determine the line of demarcation between interstate and intrastate commerce nor to mark the boundaries separating the fields wherein the Congress may act, from those left exclusively to the states.
\* \* \* "

We reject defendant's constitutional attack because it lacks substance when measured by the provisions of the Act itself, implemented by well-settled prece-

dent. No case is called to our attention which, because of factual similarity, would serve to support defendant's theory of unconstitutionality. Of course, the most serious deference is to be accorded the Congressional resolution declaring dangerous tendency of dealing in commodity futures since it is not only a legislative declaration, but because it furnishes some indicia of legislative purpose, pattern and plan. Thus, section 5 spells out the rationale behind Congressional action in this area and furnishes some explanation why that legislative body selected the Commission for ascertaining the existence of facts to which the Act is directed:

"Transactions in commodity involving the sale thereof for future delivery as commonly conducted on boards of trade and known as 'futures' are affected with a national public interest; such transactions are carried on in large volume by the public generally and by persons engaged in the business of buying and selling commodity and the products and byproducts thereof in interstate commerce; the prices involved in such transactions are generally quoted and disseminated throughout the United States and in foreign countries as a basis for determining the prices to the producers and the consumer of commodity and the products and byproducts thereof and to facilitate the movements thereof in interstate commerce; such transactions are utilized by shippers, dealers, millers and others engaged in handling commodity and the products and byproducts thereof in interstate commerce as a means of hedging themselves against possible loss through fluctuations in price; the transactions and prices of commodity on such boards of trade are susceptible to speculation, manipulation, and con-

trol, and sudden or unreasonable fluctuations in the prices thereof frequently occur as a result of such speculation, manipulation, or control, which are detrimental to the producer or the consumer and the persons handling commodity and products and byproducts thereof in interstate commerce, and such fluctuations in prices are an obstruction to and a burden upon interstate commerce in commodity and the products and byproducts thereof and render regulation imperative for the protection of such commerce and the national public interest therein."

A line which we have italicized, embedded in each of the following sections,[4] under which Grady was convicted, is seized upon by him as indicative of unconstitutionality:

"§ 6b * * * It shall be unlawful for any member of a contract market, * * * in or in connection with any order to make, or the making of (1) any contract of sale of any commodity in interstate commerce, or (2) *any contract of sale of any commodity for future delivery made, or to be made, on or subject to the rules of any contract market for or on behalf* of any person if such contract for future delivery is or may be used for (a) hedging any transaction in interstate commerce in such commodity or the products or by-products thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof—

"(A) to cheat or defraud or attempt to cheat or defraud such person;

"(B) willfully to make or cause to be made to such person any false

---

4. Section 6b—Sept. 21, 1922, Chap. 369, § 4b, as added June 15, 1936, chap. 545, § 5, 49 Stat. 1493; Section 6d—Sept. 21, 1922, chap. 369, § 4d, as added June 15, 1936, chap. 545, § 5, 49 Stat. 1494.

report or statement thereof, or willfully to enter or cause to be entered for such person any false record thereof * * *."

"§ 6d * * * It shall be unlawful for any person to engage as futures commission merchant in soliciting orders or accepting orders for the purchase or sale of any commodity for future delivery, or involving *any contracts of sale of any commodity for future delivery, on or subject to the rules of any contract market unless—*

"(1) such person shall have registered, under this chapter, with the Secretary of Agriculture as such futures commission merchant and such registration shall not have expired nor been suspended nor revoked; and

"(2) such person shall, whether a member or nonmember of a contract market, treat and deal with all money, securities, and property received by such person to margin, guarantee, or secure the trades or contracts of any customer of such person, or accruing to such customer as the result of such trades or contracts, as belonging to such customer. Such money, securities, and property shall be separately accounted for and shall not be commingled with the funds of such commission merchant or be used to margin or guarantee the trades or contracts, or to secure or extend the credit, of any customer or person other than the one for whom the same are held * * *."

Grady, a duly registered futures commission merchant (certificate No. 3028; Gov.Exh. No. 32) under that Act, envisages the foregoing sections as improper and unfettered delegations of legislative power because *inter alia* they may operate upon or affect "any type of contract which a contract market, which is nothing more than an associate (sic) of private individuals, may seek to control by the adoption of rules, may be unlawful even though it has no relationship to interstate commerce or the power to regulate such commerce." [5] This fallacious argument overlooks several correlated provisions of the Commodity Exchanges Act. A three party group consisting of the Secretary of Agriculture, Secretary of Commerce and the Attorney General constitute the Commodity Exchange Commission under § 2.[6] Duties of contract markets are laid down by § 7a [7] which requires, among other things, that such markets shall "promptly furnish the Secretary of Agriculture copies of all by-laws, rules, regulations, and resolutions made or issued by it or by the governing board thereof or any committee, and of all changes and proposed changes therein * * *." Any board of trade by force of section 7b [8] is subject to suspension or revocation as a "contract market" for failure to comply with the provisions of the Act or any rules and regulations promulgated by the Secretary of Agriculture. These sections are but a few illustrations of integrated control obvious from an examination of the entire Act. The Commission wields the power, not the individual commodity exchanges. A. L. A. Schechter Poultry Corp. v. United States, 1935, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, heavily relied upon by defendant, is inapplicable to the Act under scrutiny. There is absent in the Commodity Exchanges Act that sweeping delegation of legislative power which precipitated vulnerability of the statute involved in Schechter. We hold there are adequate standards, embodied in the Act before us, to guide determinations by the Commission. See e. g., Interstate Commerce Commission v. Louisville & Nashville Railroad Co., 1913, 227 U.S. 88, 33 S.Ct. 185, 57 L.Ed.

5. Brief for defendant, p. 79.

6. 49 Stat. 1491, 7 U.S.C.A. § 2.

7. 49 Stat. 1497, 7 U.S.C.A. § 7a.

8. 49 Stat. 1497, 7 U.S.C.A. § 7b.

431; Federal Radio Commission v. Nelson Brothers Bond & Mtg. Co., 1933, 289 U.S. 266, 53 S.Ct. 627, 77 L.Ed. 1166; Sunshine Anthracite Coal Co. v. Adkins, 1940, 310 U.S. 381, 60 S.Ct. 907, 84 L. Ed. 1263; Yakus v. United States, 1944, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834. We reject the claim that the sections singled out by defendant constitute unconstitutional delegation of power either because of an asserted absence of ascertainable standards for guidance or for any of the other reasons urged by defendant. American Power & Light Co. v. Securities & Exchange Commission, 1946, 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103. Similarly, we think the arguments charging that these sections are indefinite and vague collide with, and are struck down by, the reasoning espoused by Mr. Justice Murphy speaking for the majority in the American Power & Light Co. case. In passing, we note the following descriptions [9] of "hedges" and "hedging."

> "Those who deal in 'futures' are divided into three classes: First, those who use them to hedge, *i. e.*, to insure themselves against loss by unfavorable changes in price at the time of actual delivery of what they have to sell or buy in their business; second, legitimate capitalists, who, exercising their judgment as to the conditions, purchase or sell for future delivery with a view to profit based on the law of supply and demand; and, third, gamblers or irresponsible speculators, who buy or sell as upon the turn of a card." United States v. New York Coffee and Sugar Exchange, 1924, 263 U.S. 611, 619, 44 S.Ct. 225, 227, 68 L.Ed. 475.

> "Hedging is a method of dealing in commodity futures whereby a person or business protects itself against price fluctuations at the time of delivery of the product which it sells or buys." Corn Products Refining Co. v. Commissioner of Int. Rev., 2 Cir., 1954, 215 F.2d 513, 515.

### III. Judicial Notice.

Another chimerical point strongly urged by defendant evaporating as quickly as his constitutional attack did on close study, springs from a ruling and instruction by the district judge.

In 1922 the acting Secretary of Agriculture *designated* [10] the Chicago Open Board of Trade as a "contract market" under the then existing statutory authority, *i. e.*, the Grain Futures Act. Subsequently in 1940, a successor Secretary of Agriculture designated the Chicago Open Board of Trade as a contract market for soybeans under the Commodity Exchange Act, in this form:

> "Pursuant to the authorization and direction contained in the Commodity Exchange Act, as amended (7 U.S.C. and Sup. V, secs. 1–17a), and as further amended by the act of Congress, approved October 9, 1940 (Public Law No. 818, 76th Cong.) I, Claude R. Wickard, Secretary of Agriculture, do hereby designate the Chicago Open Board of Trade, of Chicago, Illinois, as a contract market for soybeans under the Commodity Exchange Act, as amended, effective December 8, 1940, said Board of Trade having applied for, and having otherwise complied with the conditions imposed by said act precedent to, such designation. Said designation is subject hereafter to suspension or revocation in accordance with the provisions of said act: *Provided*, That for the purpose of such suspension or revocation, such designation and the order issued by the Acting Secretary of Agriculture on October 24, 1922,

---

9. See also: Bear & Saxon, Commodity Exchanges and Futures Trading (1949), Hoffman, Future Trading Upon Organized Commodity Markets (1932).

10. Gov. Exhibit 31.

**416**

designating the said Board of Trade as a contract market under the provisions of the Grain Futures Act, shall constitute a single designation."

At the outset two salient points must be borne in mind: (i) the Commodity Exchange Act did not eradicate The Grain Futures Act, but merely amended the earlier legislation, and (ii) in 1940, soybeans were added to the statutory definition of "commodities."

Defendant objected to, and now asserts that, giving the following instruction to the jury constituted reversible error:

"Ladies and Gentlemen, a contract market as referred to in the Statutes which I have read to you is a board of trade designated by the Secretary of Agriculture as a contract market under the Commodity Exchange Act.

"The Chicago Open Board of Trade, it appears from the evidence in this case, has been so designated by the Secretary of Agriculture, and thus, I find, as a matter of law, that the Chicago Open Board of Trade is a contract market within the meaning of the Commodity Exchange Act and you are so instructed."

Having objected to the certified copies of the Secretary of Agriculture records,[11] already mentioned, defendant suggests that the acts charged in the information raised a jurisdictional issue pivoting on whether the Chicago Open Board of Trade was a "contract market" requiring submission of such issue to the fact triers. We disagree. The trial judge acted correctly, without invading the jury's province. A question of fact was not hatched simply because defendant objected[12] to government exhibits 31 and 31A,—duly authenticated designations of the Secretary of Agriculture.

Several sound answers to this aspect of defendant's appeal are available. The Secretary of Agriculture, by force of § 8a(5)[13] is authorized "to make and promulgate such rules and regulations as * * * are reasonably necessary to effectuate any of the provisions or to accomplish any of the purposes" of the Act. That official has issued regulations defining, *inter alia*, "contract markets":

"This term means a board of trade designated by the Secretary of Agriculture as a contract market under the Commodity Exchange Act."[14]

Since the district judge could have taken judicial notice of a fact unencompassing the total issue crystallized by *defendant's plea of not guilty, it would have been unnecessary to submit this facet of the case to the jury.* Seebach v. United States, 8 Cir., 1919, 262 F. 885, 888 and Lyons Milling Co. v. Goffe & Carkener, 10 Cir., 1931, 46 F.2d 241, 246, 83 A.L.R. 501. Dean Wigmore's statement effectively undercuts defendant's position:

"That a matter is judicially noticed means merely that it is taken as true without the offering of evidence by the party who should or-

---

11. Gov. Exhibits 31 and 31a.

12. "The basis of the objection is that the Court, in that instruction makes a final and ultimate conclusion of a fact * * * which we contend is in issue and should be determined by the Jury." From the colloquy below after the jury had been charged. (T.R. 241).

13. 49 Stat. 1500, 7 U.S.C.A. § 12a. See: Bowles v. Willingham, 1944, 321 U.S. 503, 515, 64 S.Ct. 641, 647, 88 L.Ed. 892: "In terms of hard-headed practicalities Congress frequently could not perform its

functions if it were required to make an appraisal of the myriad of facts applicable to varying situations, area by area throughout the land, and then to determine in each case what should be done."

14. 7 C.F.R. 1.3(h) (1949 ed.) Definition § 1.3(f) states: "These terms mean the Commodity Exchange Act approved September 21, 1922 (42 Stat. 998), as amended June 15, 1936 (49 Stat. 1491; 7 U.S.C. 1–17a), and other legislation supplementary thereto and amendatory thereof."

dinarily have done so. This is because the Court *assumes* that the matter is so notorious that it will not be disputed. But the *opponent is not prevented from disputing the matter by* evidence, if he believes it disputable." [15]

But all this goes further, for at the trial below defense counsel gave a two-fold basis for his objections to government exhibits 31 and 31A that: (i) exhibit 31A referred to the Grain Futures Act, and (ii) the form of certification of authenticity was improper. Both points are utterly groundless since the Grain Futures Act is unrepealed, in fact supplemented by, the Commodities Exchange Act; Rule 27 Fed.R.Crim.Proc., 18 U.S.C.A. demolishes the latter ground urged by defendant. There is little doubt but what the presiding judge acted correctly in overruling those flimsy objections.

### IV. Conclusions.

A narration of the evidence established below is wholly unnecessary since the defense has failed to press the motions for judgment of acquittal save with respect to the government's non-production of the books and records of Joseph D. Feeney & Company, as part of its case. This is another sterile proposition and requires no citation of authority when striking it down. Moreover defendant did not renew his motions for judgment of acquittal within five days after verdict. Fed.R.Crim.Proc. 29, 18 U.S.C.A. Nevertheless we have studied the entire record in order to satisfy ourselves that it is free from reversible error. It is.

Only by employing very awkward circumlocution and unsound reasoning could we upset the jury's verdict or annul the trial judge's rulings on all motions interposed by this defendant.

The judgment appealed is affirmed.

Affirmed.

---

15. 9 Wigmore Evidence § 2567 (3d ed. 1940).