## AUSTIN v. UNITED STATES. *

(Circuit Court of Appeals, Ninth Circuit. March 30, 1925.)

No. 4450.

**1. Witnesses ☞277(1)—Cross-examination of defendant as witness held not broader than warranted.**

Where defendant, charged with using the mails to defraud, as a witness in his own behalf testified that in all he did he merely acted as agent for another, such testimony opened the door to cross-examination on the entire case.

**2. Witnesses ☞405(2)—Right to contradict witness as to matters brought out on cross-examination is limited to such as are material to the case.**

The prosecution has not the broad right to contradict the defendant as to any collateral matter brought out on his cross-examination as a witness.

**3. Criminal law ☞684—Admission in rebuttal of testimony which was properly part of the case in chief held not prejudicial error.**

It is not prejudicial error to admit testimony in rebuttal, which should have been offered as part of the main case, unless defendant is denied the right to controvert or contradict it.

**4. Criminal law ☞369(2), 404(5)—Evidence as to forged receipts, and the receipts, held admissible in prosecution for using mails to defraud.**

It was competent for the prosecution to prove that receipts introduced in evidence by defendant were forgeries, and to use for comparison checks admittedly signed by another to prove the identity of the handwriting.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Frank H. Kerrigan, Judge.

Criminal prosecution by the United States against J. D. Austin. Judgment of conviction, and defendant brings error. Affirmed.

*Rehearing denied May 4, 1925.

William M. Morse, Jr., of Los Angeles, Cal. (Christy J. Nelson, of Los Angeles, Cal., of counsel), for plaintiff in error.

Samuel W. McNabb, U. S. Atty., and J. Edwin Simpson, Asst. U. S. Atty., both of Los Angeles, Cal.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. Commencing in the latter part of June, 1922, and for about two months thereafter, desk room was rented in an office in the city of Los Angeles, and a business conducted therein under the name of American Circulation Company, or Standard American Circulation Company. Letters were sent through the mails, from this office, or at least under the name of the Circulation Company, to numerous banks in small towns and cities in California and Oregon. The letters stated that the Circulation Company was sending one of its representatives to the city in which the bank was located to call on the business and professional men to take subscriptions for some of its publications; that subscriptions were taken in the form of a note ranging from $20 to $30, due six months from date; that the Circulation Company would allow the bank 10 per cent. for discounting and collecting these notes; that the notes would be discounted with full recourse, and, in the event that they were not paid at maturity, the same would be paid by the Circulation Company. Each letter inclosed a stamped envelope for reply, and was signed, "American Circulation Company, B. C. Bowers, Manager." If the bank to which this circular letter was directed indicated a willingness to discount the notes, the plaintiff in error, soon thereafter, visited the town or city in which the bank was located and took subscriptions for magazines in the form of notes ranging from $20 to $30, as suggested.

Whether the plaintiff in error represented that the instruments thus taken were subscriptions or promissory notes is not deemed material. After obtaining the notes, the plaintiff in error presented them to the bank and discounted them, pursuant to the terms agreed upon. No magazines were ever delivered, and it is now conceded that the entire scheme was a fraudulent one. An indictment was thereafter returned against the plaintiff in error, under section 215 of the Penal Code (Comp. St. § 10385), charging the devising of a scheme and artifice to defraud, and to obtain money and property by false and fraudulent pretenses, represen-

tations, and promises, and placing letters in the post office to execute the scheme or artifice. The present writ of error was sued out to review a judgment of conviction.

The testimony on the part of the government tended to show that no persons, other than the plaintiff in error and his wife, were at any time seen in or about the office; that mail addressed to the Circulation Company was delivered at the office to either the plaintiff in error or his wife, or was left there in their absence; that the plaintiff in error ordered the stationery and letter heads; that the multigraphed letters sent to the several banks were ordered by him, and delivery made at his home, to his wife, at his request; that the wife paid for the work by two checks, that were received in evidence; that all subscriptions were taken by the plaintiff in error, and all notes discounted by him; in short, that he and his wife were the only parties in any way connected with the Circulation Company, or the business transacted in its name.

The testimony of the plaintiff in error in his own behalf on direct examination was very brief. He testified that the desk room in the office was rented by Bowers, in his presence; that he had known Bowers for 14 or 15 years in the publishing business; that he met him in Los Angeles, and was employed by him as a solicitor and agent; that Bowers advanced to him the sum of $250; that he first saw the letter heads and stationery in the office of the Circulation Company; that he had mailed letters for Bowers from time to time, but did not know what the letters contained; that he never saw the indictment letters until presented to him in court, at the trial; that he took the notes and subscriptions as charged in the indictment; and that all moneys received, less commissions, were turned over to Bowers, and four receipts, from Bowers, for moneys thus paid, were produced and offered in evidence.

Some further testimony was offered by the plaintiff in error, tending to show that Bowers was seen in his company in and about Los Angeles, and at San Francisco. In rebuttal, the government called a handwriting expert, and submitted to him the signatures on the two checks given by the wife of the plaintiff in error in payment for the multigraphed letters, an identification card of the wife from a bank, the several indictment letters signed by Bowers, and the four receipts from Bowers, and the expert testified that the signatures to all of these letters and documents were in the same handwriting, and

that they were all signed by the wife of the plaintiff in error.

The assignments of error are 38 in number. Nearly all of these are based on rulings admitting testimony or refusing to strike testimony already given, and many of them possess little or no merit. A separate discussion of each assignment would prolong the opinion far beyond the necessities of the case. We have carefully considered each assignment in the light of the record, and find no substantial or prejudicial error.

[1] The chief objections seem to be that the court refused to confine the cross-examination of the plaintiff in error within the scope of his direct examination, and permitted the defendant in error to contradict and rebut evidence brought out by such improper cross-examination. The gravest objection to the cross-examination is its inordinate length. The time consumed was out of all proportion to the results obtained, but we cannot see that the court below abused its discretion in other respects. The testimony of the plaintiff in error, while brief, was to the effect that he was a mere agent or solicitor, and not the principal, in the transaction complained of; but this testimony, brief as it was, opened up the entire case, because all of his activities had a material bearing upon that issue.

[2] Nor do we find any abuse of discretion in rulings admitting testimony in rebuttal. Of course, we cannot accede to the broad proposition asserted by the government that it had a right to contradict every collateral matter brought out on cross-examination, because such is not the law; but we think that all testimony admitted was competent and material at some stage of the trial.

[3] It would seem that the defendant in error reserved testimony for rebuttal that should have been offered as a part of its main case. Thus the government proved, as a part of its case in chief, that the multigraphed letters to the banks and the addressed envelopes were delievered to the wife of the plaintiff in error by his direction, and that she paid the bill by checks, and, if the government intended to prove that the indictment letters were signed by the wife, that was the proper time and place to do it. But it is not prejudicial error to admit testimony in rebuttal which should have been offered as a part of the main case, unless the party against whom the testimony is admitted is denied the right to controvert or contradict it, and there was no denial of that right in this case.

· [4] The four receipts purporting to be signed by Bowers were offered in evidence by the plaintiff in error as a part of his defense, and it was, of course, competent for the government to prove that these receipts were forgeries, and were in fact signed by the wife of the plaintiff in error. It was likewise competent for the government to use the checks, which were admittedly signed by the wife, as a basis for comparison. The right to use the identification card from the bank in that connection was questionable, at least, because there was no proof as to the handwriting of the wife; but the inclusion of the identification card with the checks was not prejudicial error.

We have already covered the question as to the right of the defendant in error to show that the indictment letters were signed by the wife. We will only add in conclusion that the proof of guilt in this case was so overwhelming that nothing short of a plain, palpable prejudicial error would justify a reversal. It is admitted that the law was violated, and the testimony tending to show that Bowers was implicated in the commission of the crime was weak and unsatisfactory. But, if we concede all that the plaintiff in error claims, the conclusion is irresistible that there were two swindlers, instead of one, and that both acted in unison. In such case, each is responsible, both civilly and criminally, for the acts of the other.

The judgment is affirmed.

