## BOSTON & M. R. R. v. CARD.

(Circuit Court of Appeals, First Circuit. August 17, 1925.)

No. 1839.

1. **Trial** ⚖⟹260(8) — **Refusal of requested charge on negligent speed at crossing held not ground for complaint, in view of charge given.**

In action for damage to automobile truck stalled on a public railroad crossing, refusal of requested charge as to absence of evidence of excessive speed *held* not ground for complaint, in view of charge given, which was clearly favorable to defendant, and could not have misled jury into finding defendant was negligent because of speed of train.

2. **Railroads** ⚖⟹309—**Engineer must exercise reasonable care to prevent injury at crossing.**

It is the duty of an engineer of a locomotive to exercise reasonable care to prevent injury to any one occupying railroad crossing, whether by accident or as traveler.

3. **Railroads** ⚖⟹350(13)—**Contributory negligence at crossing for jury.**

In action for damages to truck stalled on public railroad crossing, refusal to give defendant's requested motion for directed verdict *held* not error, where there was ample evidence from which the jury could clearly find that plaintiff was in the exercise of due care.

**4. Railroads ⚖═350(7)—Engineer's negligence in failing to see and heed signal of truck drivers at crossing held for jury.**

In action against railroad company for damages to truck stalled at crossing, evidence *held*, as against motion for directed verdict, to support finding that the failure of defendant's engineer to see and heed the signals of plaintiff's employees at the preceding crossing was negligence in the operation of the train.

**5. Railroads ⚖═345(3)—Evidence of failure of engineer to blow whistle and sound bell held admissible under pleading.**

In action against railroad company for damages to plaintiff's truck, stalled at a railroad crossing, general allegation in declaration that defendant was negligent in the management of its train was sufficiently broad to admit proof, assuming it was admissible, of the failure of the engineer to blow the whistle and sound the bell in approaching the crossing.

**6. Railroads ⚖═347(9)—Evidence of failure of engineer to blow whistle and sound bell held inadmissible to prove engineer's inattentiveness in approaching crossing.**

In action for damages to plaintiff's truck, stalled on a public railroad crossing, based on engineer's failure to observe signals given by plaintiff's employees to stop, evidence of engineer's failure to blow whistle and sound the bell, admitted, not as a ground for recovery, but as tending to show engineer's inattentiveness in approaching the public crossing, *held* irrelevant to prove fact intended.

**7. Appeal and error ⚖═1170(7)—Erroneous admission of evidence of engineer's failure to blow whistle and sound bell held not prejudicial.**

In action for damages to plaintiff's truck, stalled on a public railroad crossing, based on engineer's failure to observe signals of plaintiff's employee to stop, erroneous admission of evidence of engineer's failure to blow whistle and sound bell, admitted, not as a ground for recovery, but as tending to show engineer's inattentiveness in approaching the crossing, *held* not prejudicial, under Jud. Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246), relating to technical errors, in view of other evidence sufficient to justify finding of inattentiveness.

In Error to the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

Action by Harold I. Card against the Boston & Maine Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Francis P. Garland, of Boston, Mass. (Albert W. Rockwood and Hurlburt, Jones & Hall, all of Boston, Mass., on the brief), for plaintiff in error.

Simon Cohen, of Boston, Mass., for defendant in error.

Before BINGHAM and JOHNSON, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge. Error to the District Court of the United States for the District of Massachusetts.

This is an action of tort brought by Harold I. Card, a citizen of West Haven, Conn., against the Boston & Maine Railroad, a corporation having its usual place of business at Boston, Mass., to recover damages to his automobile truck and for loss of its use.

The writ was dated March 21, 1922. There was a trial by jury. The court submitted special questions to the jury, upon which specific findings were made, and thereafter the court directed a verdict for the defendant upon the second count, and the jury found for the plaintiff on the first count, and assessed the damages at $5,208.

The defendant pleaded the general issue, contributory negligence, and a special plea that at the time of the accident the plaintiff's automobile truck was without right on the property of the defendant.

The plaintiff's evidence tended to show that between 2 and 3 o'clock on the morning of February 16, 1921, the plaintiff, Harold I. Card, together with two of his employees, a Mr. Brown and a Mr. Smith, was driving a Mack truck, duly registered and owned by him, from Boston, Mass., to Marlboro, Mass.; that they approached the grade crossing at the South Bolton Station, and, instead of making the turn to the left in the direction of the crossing, they drove on the Bolton road for a distance of about 25 feet; that the plaintiff saw that he was on the wrong road and started to back his truck, endeavoring to make a V turn so that he could return in the direction from which he came; that the road was covered with snow and ice, and the truck while backing began to slide; that Mr. Card put his truck into first speed, but it got out of his control and continued to slide backwards for about 60 feet; that it came to a stop as the right rear wheel sank into a ditch or hole located at the extreme easterly end of the covering plank of the crossing outside the rail. The left rear wheel was on the plank outside of the northerly rail but did not reach or touch the rail, so that the rear end of the truck was parallel to the railroad track and about three feet of the rear of the body of the truck extended over the northerly rail. Unavailing attempts were made to extricate the truck by its own power and by the use of a Reo speed wagon obtained from a neighboring garage. Failing to move the truck, Mr. Card unscrewed one

of the headlights and turned it westerly up the track; then he went to Hudson to obtain a larger truck. Just before he left he put a white lantern on the ground near the northerly side of the track between the South Bolton Station and the railroad track. The evidence tends to show that about a half hour before the collision a Mrs. Jacobs who lives in the house nearest to the crossing told Brown and Smith, Card's employees, that a train was due about 2 o'clock; that Brown and Smith then removed the red tail light from the truck, lighted it, and walked up the track about 600 feet. The crossing where the accident occurred is what is known as Central street, and is a public highway. About 600 feet westerly from Central street is another highway crossing known as the Berlin road crossing. Brown and Smith went up a little beyond this crossing, where Smith left Brown and returned to the Central street crossing. They waited about half an hour for the approach of the train. From where Smith was standing on the Central street crossing he could see Brown's light. As the engine came along to where Brown was standing, Smith saw Brown waiving his light. When Smith saw the engine go by Brown's light he stood on the Central street crossing and swung his lantern in front of him. When the engine did not stop he ran to get out of the way. He testified that he thought the engine was coming at the rate of 40 or 50 miles an hour as it approached the Central street crossing, and that it did not slow down at all. Mrs. Jacobs looking from the window of her house saw the red light go up the track and saw it on the Berlin crossing.

The defendant's testimony tended to show that the engine that hit the plaintiff's truck was running light, without any cars attached; that it was in charge of an engineer, a fireman, and a brakeman; that the engineer was in his seat; that the brakeman was sitting with the fireman; that as they approached the Berlin road crossing the engineer saw no one and saw no light until he rounded the curve about half way between the two crossings. He then saw Smith waiving his lantern, and he applied the emergency and brought his engine to a stop as soon as possible. The engine hit the truck and ran about 250 feet beyond the crossing. The brakeman, who was sitting ahead of the fireman on the left-hand side of the engine, testified that he saw a man standing back of the fence about 12 or 15 feet away from the track as the locomotive came past the Berlin road crossing. He saw no light in

the man's hand, and did not know what he was there for. He further testified that as the engine was about half way between the two crossings he saw something white on the Central street crossing and turned to speak to the engineer just as the engineer applied his brakes, and the engine began to slow down, but did not stop until after it struck the plaintiff's truck. The place where this accident occurred is a sparsely settled community. The nearest house to the crossing, occupied by Mr. and Mrs. Jacobs, is about 250 feet away in the direction of Boston. They have no telephone, and the South Bolton Station near the crossing was not open at that time of the night. The testimony showed that there were about 8 families within a radius of a mile. Between the Berlin road crossing and the Central street crossing, a distance of 600 feet, the track makes a right-hand curve going east, of about 3½ feet in every 100 lineal feet.

The trial judge submitted the case to the jury for special findings, which were answered as follows:

(1) Did the hole into which the truck slid constitute a defect in the highway?

The jury answer: No.

(2) Were the defendant or its employees negligent in the operation of the train?

The jury answer: Yes.

(3) If so, was such negligence the sole cause of the accident?

The jury answer: Yes.

(4) Were the plaintiff and his employees in the exercise of due care with respect to the circumstances entering into and surrounding the accident?

The jury answer: Yes.

(5) What are the plaintiff's damages?

The jury answer: $5,208.

Following this, the jury returned a verdict for the plaintiff on the first count of his declaration, and the court directed a verdict for the defendant on the second count. Judgment was entered for the plaintiff for the sum of $5,517 and costs of suit.

Thirty-two errors are assigned by the defendant, but only a few of them need be considered.

The most important assignments relate to the refusal of the court to charge in accordance with certain of defendant's requests and denying defendant's motion for a directed verdict.

[1] One of the defendant's contentions is that the court erred in refusing to charge the jury in accordance with defendant's request numbered 17, which is as follows:

"There is no evidence to warrant the jury in finding that the train approached the crossing at a speed greater than was reasonable and proper under the circumstances."

We think that the charge of the court was sufficient to cover the foregoing request and also request numbered 18, of a similar character.

The court charged the jury, in substance, that a railroad differs in its right of operating a train from a man driving an automobile on a public highway; that it is running its trains on its own lands, and it has a right to run them at such times and in such ways and and at such speed as the reasonable necessities of its own business shall require, provided it does so in obedience to the regulations of the various public bodies which it is bound to obey; that there are trains that run through from Boston to New York in about 5 hours, and they have to maintain a high rate of speed; that if one of those trains should strike a person at a crossing the jury could not say that the railroad was negligent because it ought to have limited the speed of the New York Express to a rate at which it could stop at every country crossing that a man becomes stalled on—"that is not the test at all."

The learned judge then stated the test as follows: "The test is, to restate it, the railroad has a right to run its trains (obedient always to the regulation of the commissions and bodies that control it) at whatever speed its own business advantage fairly requires."

If the jury followed the specific instructions above quoted, as we must assume they did, they could not be misled into finding the defendant was negligent because of the speed of the train.

The defendant cannot complain of the charge as to the speed of the train. It was clearly favorable to the defendant. Telfer v. Northern R. Co., 30 N. J. Law, 188; Dyson v. New York & New England R. Co., 57 Conn. 9, 17 A. 137, 14 Am. St. Rep. 82; Chase v. New York Cent. H. R. R., 208 Mass. 137, 94 N. E. 377.

[2] The defendant claims that the plaintiff was a trespasser upon the railroad's right of way, and that the only duty owed by the defendant was not to willfully or wantonly injure the plaintiff's truck. But as we understand the facts the plaintiff was within the limits of the highway, although his truck backed off the wrought portion of the road. He was at a grade crossing, known to be such by the engineer of the train, and it was the engineer's duty to exercise reasonable care to prevent injury to any one occupying the crossing, whether he came onto the crossing by accident or as a traveler. Garland v. Railroad Co., 85 Me. 519, 27 A. 615.

[3] The defendant moved for a directed verdict upon the ground that the plaintiff was guilty of contributory negligence as a matter of law. The court did not err in refusing the defendant's motion, if there was evidence from which a jury could fairly find that the plaintiff was in the exercise of due care. As there was ample evidence to be submitted to the jury upon this point in the case, there was no error. The jury found in favor of the plaintiff. (See answer, question 2.)

In eliminating contributory negligence the jury has also eliminated any idea of a verdict founded upon the doctrine of "last clear chance," the application of which was carefully explained by the court. By the special verdict, the case resolves itself into one of due care on the part of the plaintiff and negligence on the part of the defendant.

[4] This brings us to the main issue; namely, a consideration of the motion for a directed verdict upon the ground that there was no evidence to be submitted to the jury upon which it might be found that the plaintiff's truck was damaged by defendant's negligence.

The jury may have properly reasoned that the engineer was familiar with the station and the two crossings within 600 feet of each other; that reasonable care on his part required him to keep a sharp lookout on approaching the crossings, and that, if he had done so, he would have discovered the red light in Brown's hands at the Berlin road crossing; that as it appeared the train was brought to a stop in approximately 550 feet, if the brakes had been applied at the Berlin road crossing, the engine would have been brought to a stop before it reached the Central street crossing, and the damage could have been prevented. They may have reasoned upon the evidence that the engineer's failure to see and heed Brown's signal was negligence in the operation of the engine and entitled the plaintiff to a verdict. As there was evidence supporting this finding, we are not disposed to disturb the verdict. We cannot say the jury was not justified in believing the testimony of Smith and Mrs. Jacobs. Nicol v. Oregon-Wash-

ington R. & Nav. Co., 71 Wash. 409, 128 P. 628, 43 L. R. A. (N. S.) 174.

[5] One more assignment requires notice. Subject to the defendant's objection and exception, witnesses were permitted to testify that the engineer failed to give the statutory crossing signals. It is conceded that under the circumstances the failure to blow the whistle or ring the bell did not constitute such negligence as would permit the plaintiff to recover. The statutory signals are for the purpose of warning travelers of the approach of the train, and are not intended as a warning to persons stalled on the track who are fully aware of its approach.

In admitting this testimony, the court said:
"I admit that, gentlemen, not because there was any failure on the part of the defendant in failing to give the statutory signals required at the crossing, but solely for your consideration as to whether the engineer was at that time attentive or not attentive to his duties."

The defendant claims that this evidence could not be admitted under any allegation of negligence set forth in the plaintiff's writ. It is also claimed that the evidence was prejudicial.

[6, 7] Defendant's first contention cannot be sustained. Plaintiff's declaration contained a general allegation that the defendant was negligent in the management of its train. The failure to blow the whistle and sound the bell was not alleged as a substantive cause of complaint. The value of the evidence, if relevant, was not to prove such failure as a ground of recovery, but as tending to prove carelessness and inattention on the part of the engineer in approaching a public crossing. It was apparently an attempt to prove negligence in one respect from negligence in another. It had no logical relevancy to prove the fact for which it was introduced, and was immaterial. As there was abundant evidence from which the jury could have found that Brown gave the signal to the approaching train by swinging his lantern at the Berlin crossing, which signal was not observed, the jury could find on that evidence alone that the engineer was inattentive to his duties in keeping a proper lookout. This being so, it does not seem to us that the evidence was so prejudicial that the verdict ought to be set aside, for the court told the jury that they could not consider it, except upon the question whether the engineer was inattentive to his duties at the time he was called upon

to blow the whistle, which was 80 rods from the Central street crossing and approximately 43 rods west of the Berlin road crossing. We are not inclined to disturb the verdict because of the admission of this evidence.

Judicial Code, § 269, as amended by Act Feb. 26, 1919 (40 Stat. at Large p. 1181 [Comp. St. Ann. Supp. 1919, § 1246]), provides that in cases where there has been a trial by jury the court shall give judgment without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties. See Holmes v. Goldsmith, 147 U. S. 150, 164, 13 S. Ct. 288, 37 L. Ed. 118.

It is unnecessary to go into further details or enter into further discussion of the numerous assignments of errors to the refusal of the court to grant defendant's requested instructions. We find no error in any of them.

The judgment of the District Court is affirmed, with costs to the defendant in error.