## LEWIS et al. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. March 10, 1926.)

Nos. 4413–4415.

**1. Criminal law ⊙⟿386—Telephone inquiry by one who gave accused's name was not admissible against accused, in absence of proof of identity.**

Telephone inquiry by one who gave accused's name was not admissible against accused, in absence of proof of his identity with speaker.

**2. Conspiracy ⊙⟿48—Evidence of particular defendant's connection with conspiracy to violate National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) held insufficient to go to jury.**

Evidence connecting particular defendant in whose name yacht used in transporting liquor was chartered, with conspiracy to violate National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), held insufficient to go to jury.

**3. Conspiracy ⊙⟿47.**

Evidence held to warrant conviction of certain defendants of conspiracy to violate National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) by transporting intoxicating liquor from Canada.

**4. Conspiracy ⊙⟿27—Proof of accomplishment of object of conspiracy is not necessary to conviction, if overt act in furtherance thereof was committed.**

Proof of accomplishment of object of conspiracy is not necessary to conviction, if in furtherance thereof one of overt acts charged was committed by conspirators.

**5. Criminal law ⊙⟿423(4)—Statements by one conspirator in carrying out conspiracy were competent evidence against others, though he was not under process or on trial.**

Statements by one indicted as conspirator, made in carrying out conspiracy, though he was not under process or on trial, were competent evidence against others.

**6. Criminal law ⊙⟿1169(1)—Admission in evidence of conversations by witness with others, if error, held not prejudicial, where they carried no implication of defendants' guilt (National Prohibition Act [Comp. St. Ann. Supp. 1923, § 10138¼ et seq.]).**

In prosecution for conspiracy to violate National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), admission in evidence of conversations between owner of yacht leased by defendants and persons assisting him to locate it after termination of lease, if error, was not prejudicial, where they carried no implication of defendants' guilt.

**7. Criminal law ⊙⟿448(1).**

Objection to questions by defendants' counsel, calling for conclusions of witness, held properly sustained.

**8. Witnesses ⊙⟿389.**

Where government's witness stated that he did not make certain statement, objection to question intended to discredit him held properly sustained.

**9. Witnesses ⊙⟿246(1)—Trial court's examination of one of crew of vessel as to contents of boxes in cargo held not error, where certain defendants denied knowledge that vessel carried intoxicating liquor (National Prohibition Act [Comp. St. Ann. Supp. 1923, § 10138¼ et seq.]).**

In prosecution for conspiracy to violate National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), where certain defendants denied knowledge that boat involved carried liquor, it was not error for trial judge to question member of crew of vessel as to contents of certain boxes in vessel's cargo, and as to whether there was drinking on boat, or talk of what cargo contained.

**10. Criminal law ⊙⟿427(3)—Admission in evidence of incriminating statement by one defendant, without first permitting cross-examination of witness through whom it was offered, held not error.**

Admission in evidence of incriminating statement by one defendant, without first permitting cross-examination of witness through whom it was offered, held not error, where court stated that counsel might cross-examine witness later, and, when he did so, nothing was disclosed to discredit admissibility of statement.

**11. Witnesses ⊙⟶246(1)—Trial court held not subject to criticism in questioning witness in liquor prosecution (National Prohibition Act [Comp. St. Ann. Supp. 1923, § 10138¼ et seq.]).**

Trial court was not subject to criticism in questioning witness in prosecution for conspiracy to violate National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), but was only performing its duty in attempting to discover truth, if possible.

**12. Criminal law ⊙⟶1166½(12)—Trial court's questioning of defendants' counsel during his opening statement as to defendants' position on certain evidence, though not approved, held not ground for reversal (Judicial Code, § 269 [Comp. St. Ann. Supp. 1919, § 1246]).**

Practice of trial court in questioning defendants' counsel as to defendants' position regarding government's evidence, while counsel was making his opening statement, though not approved, *held* not ground for reversal, in view of Judicial Code, § 269 (Comp. St. Ann. Supp. 1919, § 1246).

**13. Criminal law ⊙⟶704—Defendants' counsel should not have made opening statement, if he did not expect to introduce evidence to substantiate it.**

Defendants' counsel should not have made opening statement, if he did not expect to introduce evidence to substantiate it, and it is no answer that he expected to prove points stated to jury by witnesses introduced by other defendants, where his statement in several particulars was susceptible of verification only by his client.

In Error to the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Al Lewis, Alfred Emond, and Alfred Watkins were convicted of conspiracy to violate National Prohibition Act, and they bring error. Judgment affirmed as to defendants Emond and Lewis, and reversed as to defendant Watkins.

Hubert O'Brien and John R. Watkins, both of Detroit, Mich., for plaintiffs in error.

Delos G. Smith, U. S. Atty., of Detroit, Mich.

Before DENISON, MACK, and MOORMAN, Circuit Judges.

PER CURIAM. Plaintiffs in error seek to reverse a judgment of the District Court for the Eastern District of Michigan convicting them of conspiracy to violate the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.). Indicted with them were Ed Kellner and Max Kellner, who were never apprehended, and Alexander Clifford and John J. Dorrington, who were acquitted on the trial. The object of the conspiracy, as alleged, was to bring into the United States from the Dominion of Canada a large quantity of intoxicating liquor for beverage purposes. The means by which this was to be effected were set out in the indictment, as were several overt acts alleged to have been committed. The salient facts are:

Emond chartered in the name of Watkins the yacht Aladdin from Mrs. W. J. Sovereign, wife of the owner, for 30 days, with the privilege of purchasing it at the expiration of that period. The boat made two trips to Toronto, procured at one time 200 and another 450 cases of whisky, and transported it to a point opposite Ecorse, Mich., in the Detroit river—apparently on the Canadian side of the river—where it was met by small boats, which, as some of the testimony for the government shows, conveyed the liquor to the American side. An attempt to make the third trip was frustrated by the owner, who after the expiration of the lease began a search for and located the boat at Toronto, taking possession of it. Emond and Lewis were in charge of the boat when these trips were made. Watkins was never aboard it but once and it was not then engaged in the liquor traffic.

[1, 2] Watkins' connection with the conspiracy, as shown by the proof, was limited to the following circumstances: Emond was living in the family of Watkins, as if a son-in-law. The boat was chartered in Watkins' name, the Packard automobile, which Emond left with Mrs. Sovereign as security for its return, belonged to him, and he and Mrs. Watkins were seen aboard it prior to the first trip to Toronto. A telephone inquiry about the boat by one who gave his name as Alfred Watkins was put in evidence, but we think it was not admissible against Watkins, because there was no proof of his identity with the speaker. It does not appear that he knew his name had been used in chartering the boat, or that he had the remotest interest in it, and in our opinion the evidence was not sufficient to submit the case against him to the jury.

[3, 4] We cannot, however agree with the contention that there was a failure to prove a conspiracy as against Emond and Lewis. There was concededly no express agreement proved, but the admitted facts as to the leasing and operation of the boat clearly implied an agreement to do the things with which they were charged and which constituted conspiracy. Furthermore, there was ample evidence to support the averment that the object of the conspiracy was to bring liquor into the United States. It was not necessary to prove the accomplishment of the object, if it was shown, as alleged, that in the furtherance of it some one of the overt acts charged

was committed by one of the conspirators. Hyde v. U. S., 32 S. Ct. 793, 225 U. S. 347, 56 L. Ed. 1114, Ann. Cas. 1914A, 614. There is abundant evidence of the commission of one or more of such acts.

[5] Complaint is made of the admission and rejection of testimony. One matter complained of pertains to a conversation between a government witness and Kellner, one of the alleged conspirators, in which the latter attempted to procure the services of the former in transferring whisky from the boat to Ford City. Kellner was not under process or on trial, but was indicted and shown to be one of the conspirators, and any statement made by him in carrying out the conspiracy was competent against the others.

[6] The admission in evidence of Sovereign's statement of his efforts to locate the boat, wherein he referred to conversations had with some of those who were assisting him, was not prejudicial error, since these conversations carried no implication of guilt on the part of defendants, and could not have prejudiced their case, even though erroneously admitted.

[7] Objections to the questions of counsel for Dorrington and Clifford on cross-examination, which called for a conclusion from the witness, were properly sustained; besides, the inquiry was whether those defendants were guilty as charged, and did not relate to the existence of the conspiracy among the others or what they did.

[8] It was also proper to sustain an objection to an inquiry of a witness for the government as to what conversation occurred between him and a fellow passenger on a train, the purpose being to discredit the witness, who had already stated, in answer to a specific question, that he did not make a certain statement. Other criticisms of the rulings on the evidence are equally unmeritorious.

[9] Objections are made to the trial judge's participation in the examination of witnesses, the manner in which it was done, and the restrictions placed on counsel for defendants. We refer to a few typical of the others. Among them was the interrogation of Deutscher, one of the Aladdin crew, who was asked, after having testified that the cargo consisted of boxes, what was in the boxes; whether there was any drinking on board, or any talk of what the cargo consisted. The witness' replies did not incriminate defendants; he disclaimed knowledge of any fact indicating the contents of the boxes. But, without regard to that, the examination was proper, in view of the claim of some of the defendants that they did not know the boat carried a cargo of liquor.

[10] Nor was it error to admit in evidence an incriminating statement of Dorrington, without first permitting a cross-examination of the witness through whom it was offered. In overruling the motion to cross-examine at that time, the court stated to counsel that he might cross-examine the witness later on. It does not appear that when he did so anything was disclosed to discredit the admissibility of the statement.

[11] The questioning of the witness Bunting, who testified to the unloading of the cargo into small boats on the Canadian side of the river, was not improper. It did not bring out any fact not theretofore shown; but, whether that be true or not, the court was only performing its duty in attempting to discover the truth, if possible, and is not fairly subject to criticism for so doing.

[12, 13] At the conclusion of the government's case in chief, counsel representing Emond and Watkins made a statement to the jury of the facts and grounds upon which those defendants relied for defense. In the course of the statement the court asked counsel some direct questions as to what the position of his clients would be in reference to certain evidence introduced by the government; for example, what his client would say was his reason for chartering the boat. The questions were direct and persistent, in the face of replies that were not illuminating. We cannot approve the practice of putting questions of this character to counsel during an opening statement, but in view of the proof against these defendants we are not warranted, under section 269 of the Judicial Code (Comp. St. Ann. Supp. 1919, § 1246), in reversing the judgment because of this action of the court. Knable v. U. S. (6 C. C. A.) 9 F.(2d) 567. Besides, it is only fair to say that an opening statement should not have been made by counsel, if he did not expect to introduce evidence tending to substantiate it. It is not, we think, a response to this criticism to say that he expected to prove the points stated to the jury by witnesses introduced by other defendants. His statement in several particulars was susceptible of verification only by his client.

The judgment is affirmed as to Emond and Lewis, and reversed as to Watkins.