## MILLER v. UNITED STATES.[*]

Circuit Court of Appeals, Eighth Circuit.
August 3, 1927.

### No. 7744.

1. **Intoxicating liquors ⬿216—Alcohol and whisky are intoxicating liquors, and need not be further described in indictment.**

Under National Prohibition Act (27 USCA [Comp. St. § 10138¼ et seq.]), alcohol and whisky are intoxicating liquors, and an indictment need not further describe them.

2. **Criminal law ⬿1158(3)—Denial of new trial for disqualification of juror on conflicting affidavits will not be disturbed.**

Denial of new trial for alleged disqualification of juror, on conflicting affidavits, will not be disturbed.

3. **Criminal law ⬿402(1)—Admission of secondary evidence of letter held not error.**

Admission of secondary evidence of contents of letter received by witness, in consequence of which he called on defendant, *held* not error.

4. **Criminal law ⬿1186(4)—Admission of incompetent testimony held not ground for reversal (Judicial Code, § 269, as amended by Act Feb. 26, 1919 [28 USCA § 391]).**

Admission of incompetent testimony to impeach defendant as a witness with respect to an immaterial matter, while error, *held* not ground for reversal under Judicial Code, § 269, as amended by Act Feb. 26, 1919 (28 USCA § 391 [Comp. St. § 1246]).

5. **Criminal law ⬿684—Admission of testimony in rebuttal which should have been offered in main case is discretionary.**

Admission of testimony in rebuttal which should have been offered in the main case is discretionary and not ground for reversal.

Kenyon, Circuit Judge, dissenting.

*Rehearing denied November 14, 1927.

In Error to the District Court of the United States for the Northern District of Iowa; George C. Scott, Judge.

Criminal prosecution by the United States against Herman Miller. Judgment of conviction, and defendant brings error. Affirmed.

Edwin L. Weisl, of Chicago, Ill., and C. N. Jepson, of Sioux City, Iowa, for plaintiff in error.

B. E. Rhinehart, U. S. Atty., of Anamosa, Iowa, Don G. Mullan, Asst. U. S. Atty., of Sioux City, Iowa, and G. P. Linville, of Cedar Rapids, Iowa, for the United States.

Before KENYON, Circuit Judge, and MOLYNEAUX and JOHN B. SANBORN, District Judges.

JOHN B. SANBORN, District Judge. The plaintiff in error was defendant in the court below, and in this opinion he will be so referred to.

The defendant, together with Frank J. Carpenter, William Rathbun, Alfred Cooper, and Martin C. Knudsen, was indicted, charged with a conspiracy to violate the National Prohibition Act (27 USCA [Comp. St. § 10138¼ et seq.]). All of the other defendants entered pleas of guilty and, with the exception of Knudsen, testified for the government. The defendant Miller entered a plea of not guilty and was convicted. A motion in arrest of judgment and for a new trial was made, based substantially upon the same errors as are now assigned, and was denied. The defendant sued out a writ of error. The grounds upon which he asks that the judgment and sentence of the court below be reversed and a new trial granted him are as follows:

(1) That the indictment is insufficient.

(2) That one of the jurors was disqualified.

(3) That evidence was admitted as to the contents of a certain letter claimed to have been written by the defendant to John Hoffman.

(4) That the court admitted in evidence, over the objection of the defendant, testimony of the codefendant Carpenter to the effect that Miller's uncle, Herman Galinsky, said, in the presence of Miller and himself, "Do you think we are going to let this young fellow (referring to Herman Miller) go to the penitentiary with all the money we have got?"

(5) That the court admitted in evidence on rebuttal, over objection, the testimony of the codefendant William Rathbun to the effect that Miller had stated in his presence, "For God's sake, don't let anybody know my connection with John Hoffman."

We take up the questions in their order.

[1] 1. The defendant contends that the indictment is insufficient because it fails to show a violation of the National Prohibition Act, in that there is no allegation that the "alcohol and moonshine whisky were fit for use for beverage purposes." The indictment charges a conspiracy to manufacture, in violation of the act, intoxicating liquor, to wit, alcohol and moonshine whisky. It is unnecessary to discuss this question because of the fact that it has been already answered adversely to the contentions of the defendant. Davis v. United States (C. C. A.) 274 F. 928; Strada v. United States (C. C. A.) 281 F. 143; Massey v. United States (C. C. A.) 281 F. 293; Hensberg v. United States (C. C. A.) 288 F. 370; Weinstein v. United States (C. C. A.) 11 F.(2d) 505; Belvin v. United States (C. C. A.) 12 F.(2d) 548; Williams v. United States (C. C. A.) 3 F.(2d) 933; United States v. McGuire (D. C.) 300 F. 98; Martin v. United States (C. C. A.) 299 F. 287; Bronstein v. United States (C. C. A.) 17 F.(2d) 12.

[2] 2. We are asked to determine that the juror O'Brien was disqualified. Upon his voir dire, he disclosed no prejudice against the defendant. Upon the motion for a new trial there were presented to the court affidavits of David F. Loepp, Clay H. Jensen, and Jacob C. Gleysteen, who were attorneys for the plaintiff in the case of Bergeron v. Travelers' Insurance Co., called for trial at the same term of court and a few days prior t the trial of the defendant. Their affidavits state, in substance: That, upon his being examined as to his qualifications to sit in that case, O'Brien had stated, in effect, that he could not be a fair and impartial juror in any case in which intoxicating liquor was involved; that he had no use for any one who drank intoxicating liquor or who was in any way connected with intoxicating liquor; that the case that they were trying was one to recover for accidental death under a policy of accident insurance, the plaintiff claiming that the deceased had been drinking gin supposing it was made of grain alcohol, when in fact it was wood alcohol, and the wood alcohol was taken accidentally. There was also presented the affidavit of Paul H. Mummert, to the effect that Mr. O'Brien had stated to him, with reference to an attorney of a defendant in a case involving an alleged violation of the National Prohibition Act, "I don't think much of him or of any other attorney who

would protect a bootlegger." The attorneys for the defendant filed their own affidavit to the effect that, if they had known or been informed of the disqualification of Mr. O'Brien, they would not have accepted him as a juror. In resistance to the motion for a new trial, there were filed by the government the following affidavits: That of Mr. O'Brien to the effect that he is a citizen of the city of Spencer, Iowa, and by occupation a farmer and president of the Farmers' Savings Bank at Fostoria, Iowa; that he was examined as to his qualifications by the attorneys for the plaintiff in the case of Freda Bergeron v. Travelers' Insurance Co. of Hartford, Connecticut (the same case as was referred to in the affidavits of David F. Loepp, Clay H. Jensen, and Jacob C. Gleysteen); that in the examination he at no time stated that he could not be a fair and impartial juror in any cause in which intoxicating liquor was involved, and that at no time in said examination and in response to questions propounded to him did he state that he was so prejudiced against intoxicating liquor that he could not be a fair and impartial juror in any case in which intoxicating liquor was involved. The affidavit of W. Z. Long that he was on the same panel with Mr. O'Brien and that he heard his examination in the case of Bergeron v. Travelers' Insurance Co., and that at no time in the examination did O'Brien state that he could not be a fair and impartial juror in any case in which intoxicating liquor was involved, and that at no time in the examination did he state that he was so prejudiced against intoxicating liquor that he could not be a fair and impartial juror in any case in which intoxicating liquor was involved. The affidavit of L. R. Bellows, another juror on the same panel with Mr. O'Brien; that he heard O'Brien's examination, and that no such statements were made by him upon his examination in the case referred to.

In denying the motion for a new trial, the court said:

"The jury impaneled in the civil case was impaneled but a few days prior to the trial of the case under consideration. The court has a fairly clear recollection of that matter, inasmuch as the court examined the jury for cause in that case; that is, the examination of the jury was in part conducted by the court, and the court recalls the examination of the juror O'Brien. I do not recall it, however, in the language, or in substance of the language in the affidavits filed in support of the motion for a new trial. The juror in that case was apparently cautious. He in-

dicated, in response to certain questions propounded by counsel, that he might be prejudiced in a case such as was suggested to him. The examination was not very prolonged, however. The juror was challenged for cause, and the challenge was not resisted. In those circumstances the court told the juror to stand aside. The questions put to the juror at that time in connection with the case then supposedly about to go on trial, the court does not think indicates that the juror would be a disqualified juror to sit in the case now under consideration. However, the examination of the juror O'Brien on his voir dire in this case was quite full and complete. It showed him to be a qualified juror, and he was not challenged. The court is of opinion that the showing in this case as to the disqualification of this juror is insufficient even though it were rulable, which is doubtful, except in the most extreme cases, to challenge a verdict of a jury on account of the disqualification of a single juror, which was not developed upon his examination, by bringing in the affidavits of parties as to declarations of that juror in the past, not with respect to the case in hand or anything connected with it, but with respect merely to a general subject which is akin to the case. If verdicts could be set aside upon a showing of that kind, few would stand, it seems to me."

The question of the qualification of jurors is peculiarly one for the trial court. The affidavits related to what O'Brien is claimed to have said while being examined as to his qualifications to sit in a case other than this. He denies having made the statements, and is corroborated by two other jurors on the same panel. The court recalled no such statements on his part. We see no reason to disturb the conclusion reached by the trial court.

[3] 3. The third assignment of error relates to the admission of the contents of a letter referred to in the testimony of a witness, John Hoffman. It was claimed by the government that John Hoffman was experienced in the distilling of intoxicating liquor, both from mash and from what is commonly known as body rub alcohol; that the defendant procured his services for the other defendants, who were actually engaged in operating or attempting to operate a distillery. Hoffman testified for the government that he had been working for some distillers in Minneapolis; that while still employed there he had had a conversation with Herman Miller relative to working for the other defendants when they were ready to start operations; that he came home on a certain Sunday morning from Minneapolis; and that

there was a letter for him at home in Sioux City. On direct examination, he testified, with reference to this, that he read the letter; that he went down to see Herman Miller; that he destroyed the letter around Christmas time and was unable to produce it; that he recalls the contents of the letter; that it was signed; that he knows Herman Miller's signature and knew it at the time he received the letter; that Herman Miller's signature was attached to the letter; that it said, "Come down at once, I want to see you, bring this letter with you." On cross-examination, he stated that he had testified that he knew the signature of Herman Miller. He was then asked:

"Q. When did you ever see it before, it was upon this letter as you say? A. Well, I could see by the reading, and it is stamped on top 'I. Miller & Co.,' and then he signed it below; I knew that was him."

On motion of the defendant, the answer was stricken and the question repeated. He then said:

"A. Well, that way, I couldn't say it was his letter, I could just see—

"Q. You couldn't say to-day whether a signature that was upon a piece of paper was written by Mr. I. Miller or not, could you? A. No, sir; I couldn't tell that."

He then stated that he knew that the signature was not that of his wife, and was asked this question:

"Q. Well, because your wife didn't—it didn't look like your wife's signature—you assume it was Herman Miller's, did you? A. Why, it was a sheet of paper, says 'I. Miller & Company' on top, and then he wrote on there, 'Come down at once, I want to see you, and bring this letter with you,' and signed—"

A motion was then made to strike from the record all the evidence of the witness with reference to the contents of this letter for the reason that it was incompetent, irrelevant, and immaterial, no proper foundation laid for the introduction of any secondary evidence, and that the witness had shown himself incompetent to identify the signature of the defendant. This motion was overruled. The ruling was correct. The receipt of the letter and Hoffman's calling upon Herman Miller was a mere link in a chain of circumstances, and the question as to whether the letter was from Miller or had any connection with him was a question of fact for the jury on the evidence set forth. There is no statement on the part of Hoffman, on cross-examination, that he did not know the signature of Herman Miller, and on the direct examination he testified that he did know it.

[4] 4. On the cross-examination of the defendant Miller, the United States attorney asked this question:

"Q. I will ask you if it isn't true that at that time and place, when Mr. Galinsky was present, I will ask you if it isn't true that Mr. Galinsky said, in substance, to Mr. Carpenter and in your presence, 'What are you going to do about this?' and that Carpenter said he didn't know what he could do, and that Mr. Galinsky said to him, 'Well now, I want you to understand one thing, we are not going to let this boy, referring to you, go to the penitentiary with all the money we have got.' I will ask you if it isn't true that that was said at that time between Mr. Carpenter and Mr. Galinsky in your presence? A. No, sir; that is a lie."

On rebuttal, the government put the co-defendant Carpenter upon the stand. He was then asked whether, at the time and place referred to in the previous question, Herman Galinsky had made the statement, "Do you think that we are going to let this young fellow, referring to Herman Miller, go to the penitentiary with all the money we have got?" The question was objected to on the ground "that it does not include or incorporate the impeaching question asked of the witness Miller, that it includes statements that were not asked of the witness Miller, and that, if for the purpose of impeachment, it is upon an immaterial matter and for that reason incompetent and immaterial." The objection was overruled, and the witness answered that such a statement was made. The defendant claims that this was error, and not only that, but that it was of such a serious and prejudicial character as to require the reversal of the judgment and the granting of a new trial. It is obvious from the record that the court was under the impression that the testimony of Carpenter in rebuttal was admissible for the purpose of impeachment only. When Carpenter had first testified for the government, he was asked, with reference to this same conversation between himself, Mr. Galinsky, and Herman Miller, this question:

"Q. All right. Now, you told a part of what was said; what did Herman Miller say, and what, if anything, did Herman Galinsky say at that time in the presence of Herman Miller to you? A. Wanted to know what we were going to do.

"Q. Who wanted to know? A. Galinsky and Herman Miller. Mr. Galinsky says, 'Let's get this over with, buy this out before it comes to court and have it done with.' He said, 'Do you think we will leave Herman

Miller go to the penitentiary with all our money?'

"Q. And what if anything did Herman Miller say at that time? A. Do you mean while I—?

"Q. At that time you were there alone when you were talking with Herman Miller and Herman Galinsky, what if anything did Herman Miller say about it when you were talking it over? A. Why, Herman himself—

"Q. You mean Herman Miller? A. Yes; Herman Miller himself did not say a great deal, all he introduced me to this man. He asked me about this case and the words Galinsky told me there about keeping Herman from the penitentiary, 'With our money' he said, 'Herman said, "Settle it, let's get it settled and not go to court if there is a way out of it without going to court." ' "

At this point, the attorney for the defendant moved to strike the testimony of the witness "as to what some person said other than this defendant, for the reason that it is incompetent, irrelevant, and immaterial, not redirect examination, and can in no way bind this defendant." The court then said, "It was not objected to—" Counsel said, "I did not know at the time—" The court then struck the testimony as to what Galinsky said and admonished the jury not to consider it.

The testimony of the witness Carpenter, given on rebuttal and assigned as error, was not competent to impeach the defendant Miller. It related to a statement made by a third person in Miller's presence, to which no reply was made, and which called for none.

In the case of Goldsby v. United States, 160 U. S. 70, 73, 16 S. Ct. 216, 218 (40 L. Ed. 343), the court said:

"John Schufeldt, the son of the man whose store was robbed, in his testimony on behalf of the government, identified the accused not only as one of the robbers but also as the one by whom the murder was committed. He was asked, on cross-examination, whether he had heard his father, in the presence of a Mr. John Rose, say that the robbers were, one an Indian, and the other a white man. He answered that he did not recollect hearing him make such a statement. On the opening of the defendant's case, Schufeldt was recalled for further cross-examination, and the question was again asked him, he replying to the same effect; thereupon the defense put Rose upon the stand to testify to the conversation had by him with the father of Schufeldt in his (John Schufeldt's) presence, the father not being a witness in the cause. On objection, the testimony was excluded on the ground that, whilst it would be competent if the proper foundation had been laid to impeach the witness, by proving statements made by him, it was incompetent to affect his credibility by proving statements made by another person, not a witness in the case. The ruling was manifestly correct."

See, also, People v. Koerner, 154 N. Y. 355, 48 N. E. 730.

The question then arises as to whether this error requires a new trial.

In the case of Holmes v. Goldsmith, 147 U. S. 150, 164, 13 S. Ct. 288, 292 (37 L. Ed. 118), the court said:

"The modern tendency, both of legislation and of the decision of courts, is to give as wide a scope as possible to the investigation of facts. Courts of error are specially unwilling to reverse cases because unimportant and possibly irrelevant testimony may have crept in, unless there is reason to think that practical injustice has been thereby caused."

Section 269 of the Judicial Code, as amended by the Act of February 26, 1919 (40 Stat. 1181; Comp. Stat. Ann. Supp. 1919, § 1246 [28 USCA § 391]), provides:

"All of the said courts shall have power to grant new trials, in cases where there has been a trial by jury, for reasons for which new trials have usually been granted in the courts of law. On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

With reference to this legislation, this court, in the case of Furlong v. United States, 10 F.(2d) 492, 495, said:

"The object of the legislation is to abolish the old rule that when error is shown prejudice will be presumed. It creates a presumption in favor of the judgment, and requires the party seeking a new trial to convince the court upon the entire record that the judgment is wrong. If the judgment is right, the end of the law has been attained, and it ought not to be disturbed. Some errors are so fundamental as to justify in and of themselves an inference that they have perverted the trial. Such however is seldom the character of rulings on questions of evidence, instructions to the jury, or other matters of procedure. Stegeman v. Pa. R. Co. (C. C. A.) 6 F.(2d) 873."

In Trope v. United States (C. C. A.) 276 F. 348, 351, this court said:

"Since the amendment of section 269 of the Judicial Code, * * * the burden is on the plaintiff in error to show from the whole record that some substantial right has been denied to him."

In the case of Rich v. United States (C. C. A.) 271 F. 566, 570, this court quoted with approval the language of the Circuit Court of Appeals of the Seventh Circuit in the case of Haywood et al. v. United States, 268 F. 795, with reference to section 269 of the Judicial Code:

"From recent legislation (citing statute) we gather the congressional intent to end the practice of holding that an error requires the reversal of the judgment unless the opponent can affirmatively demonstrate from other parts of the record that the error was harmless, and now to demand that the complaining party show to the reviewing tribunal from the record as a whole that he has been denied some substantial right whereby he has been prevented from having a fair trial."

In Hall v. United States, a decision by this court, 277 F. 19, a situation similar to that here presented was considered. The court said:

"It is next contended that the trial court erred in permitting the United States to attempt to impeach the testimony of the defendant on an immaterial issue. This alleged error arose in this way: On the trial of the defendant he was asked by counsel for the United States about a trip he had made to Gallup, N. M., with one Walters, and in regard to the purpose for which said trip was made. Defendant testified that he had gone to Gallup at the request of Walters. He was then asked if the object of the trip was not to buy whisky. Defendant answered, 'No, sir.' Counsel for the United States then offered over the objection of counsel for the defendant the stenographic notes of a former trial for the offense charged in the indictment, which stenographic notes showed that defendant had testified at the former trial that he had gone to Gallup on the request of Walters to buy Indian rugs and whisky. The only matter tending to impeach the evidence of the defendant was that on the former trial he had testified that he had gone to Gallup for the purpose of buying whisky, and at the present trial he had testified that he had not gone for that purpose. The evidence, we think, was clearly inadmissible, but it does not appear that the defendant was prejudiced in any way by the admission of the testimony. The defendant was not on trial for a violation of any law regulating the sale or transportation of intoxicating liquor.

The burden was on the defendant to show that the error was prejudicial. Rich v. U. S. (C. C. A.) 271 F. 566; Trope v. U. S. (8th Cir.) [276] 277 F. 348, filed October 21, 1921."

In Hermansky v. United States (C. C. A.) 7 F.(2d) 458, 460, it appeared that a defendant was charged with maintaining a nuisance in violation of the National Prohibition Act. A witness was permitted to testify, over objection, that he had sent federal agents to the drug store of the defendant because he had had many complaints of bootlegging in the store. The court held that the admission of the evidence was error, and said with reference to it:

"This hearsay statement, objected to, in no way can be rebutted. The damage is done. Sometimes questions of this nature drop into a case on cross-examination rather inadvertently, as possibly was the situation here, and the court can easily take care of it in his instructions. That was not done, however. While we consider the introduction of this evidence as error, we would not deem it sufficient, standing alone, to require a reversal. Trope v. United States (C. C. A.) 276 F. 348; Hall v. United States (C. C. A.) 277 F. 19; Rich v. United States (C. C. A.) 271 F. 566; Horning v. District of Columbia, 254 U. S. 135, 41 S. Ct. 53, 65 L. Ed. 185."

In Apt v. United States, 13 F.(2d) 126, this court severely criticised the method of the United States attorney on cross-examining a witness, and said:

"If it were probable the cross-examination had prejudiced the jury against the defendant to the extent of influencing their verdict, it would be the duty of the court to reverse the verdict in the interest of justice. But this cross-examination, though improper, could not have been prejudicial. The connection of the defendant Apt with the conspiracy charged in the indictment was so clearly shown, and the verdict of the jury such a righteous one, that it would be a miscarriage of justice to reverse it on account of this indefensible cross-examination."

See, also, Haggerty v. United States (C. C. A.) 5 F.(2d) 224; Barron v. United States (C. C. A.) 5 F.(2d) 799; Boston & M. R. R. v. Card (C. C. A.) 7 F.(2d) 428; Knable v. United States (C. C. A.) 9 F.(2d) 567; Harris v. United States (C. C. A.) 10 F.(2d) 358; Horning v. District of Columbia, 254 U. S. 135, 41 S. Ct 53, 65 L. Ed. 185; Lewis v. United States (C. C. A.) 11 F.(2d) 745; Campbell v. United States (C. C. A.) 12 F.(2d) 873; Hood v. United States (C. C. A.) 14 F.(2d) 925; Cook v. United States (C.

C. A.) 14 F.(2d) 833; Hill v. United States (C. C. A.) 15 F.(2d) 14; Murdick v. United States (C. C. A.) 15 F.(2d) 965; Armstrong v. United States (C. C. A.) 16 F.(2d) 62; Sartain v. United States (C. C. A.) 16 F.(2d) 704; Hoffman v. United States, 20 F.(2d) 328.

The alleged statement of Herman Galinsky had first come to the attention of the jury with the testimony of Carpenter in the government's main case. It is true that it was stricken out and the jury admonished to disregard it. However, as a practical matter, the contradiction of Miller's statement that it was a lie that Herman Galinsky had made such a statement in his presence, by Carpenter on rebuttal, lost much of its prejudicial effect by reason of this situation. We would not be justified in setting aside the verdict of the jury for this error standing alone, when the entire record shows that the connection of the defendant with this conspiracy was abundantly proven and that the trial on the whole was eminently fair.

[5] 5. The claim that it was error to admit the testimony of the codefendant Rathbun that the defendant had said, "For God's sake, don't let anybody know my connection with John Hoffman," is based upon the fact that it was brought in upon rebuttal and was admitted over the objection that it was not rebuttal. This court has said:

"The order in which testimony otherwise competent and material may be introduced is a matter very largely within the control of the trial court, and prejudicial error in its action must be made clearly apparent before an appellate court is justified in predicating error thereon." A., T. & S. F. Ry. Co. v. Phipps (C. C. A.) 125 F. 478.

See, also, Seebach v. United States (C. C. A.) 262 F. 885; United States v. Heitler (D. C.) 274 F. 401, 406; Marron v. United States (C. C. A.) 8 F.(2d) 251.

In the case of Goldsby v. United States, supra, the Supreme Court of the United States, in referring to certain testimony, said:

"It was obviously rebuttal testimony; however, if it should have been more properly introduced in the opening, it was purely within the sound judicial discretion of the trial court to allow it, which discretion, in the absence of gross abuse, is not reviewable here. Wood v. United States, 16 Pet. 342, 361 [10 L. Ed. 987]; Johnston v. Jones, 1 Black, 209, 227 [17 L. Ed. 117]; Commonwealth v. Moulton, 4 Gray [Mass.] 39; Commonwealth v. Dam, 107 Mass. 210; Commonwealth v. Meaney, 151 Mass. 55 [23 N. E. 730]; Gaines v. Commonwealth, 50 Pa. 319; Leighton v. People, 88 N. Y. 117; People v. Wilson, 55 Mich. 506, 515 [21 N. W. 905]; Webb v. State, 29 Ohio St. 351; Wharton's Criminal Pleading and Practice, § 566; 1 Thompson on Trials, § 346, and authorities there cited."

In Austin v. United States (C. C. A. 9) 4 F.(2d) 774, 775, the court said:

"But it is not prejudicial error to admit testimony in rebuttal which should have been offered as a part of the main case, unless the party against whom the testimony is admitted is denied the right to controvert or contradict it, and there was no denial of that right in this case."

The judgment is affirmed.

KENYON, Circuit Judge (dissenting). In the majority opinion it is stated: "The testimony of the witness Carpenter given on rebuttal and assigned as error was not competent to impeach the defendant Miller. It related to a statement made by a third person in Miller's presence, to which no reply was made and which called for none." With this statement I am in accord.

The majority opinion also states: "The question then arises as to whether this error requires a new trial." I am unable to agree that the error is without prejudice to the substantial rights of defendant, or that section 269 of the Judicial Code is applicable to the situation presented.

An effort had been made by counsel for the government to get before the jury, in the testimony of Miller's codefendant, Carpenter, an alleged statement of a relative of Miller named Galinsky, as follows: "Do you think we will leave Herman Miller go to the penitentiary with all our money?" This statement the government claimed was made in the presence of Miller. Such testimony after admission without objection was stricken from the record by the court, and the jury admonished not to consider it. When defendant Miller was upon the stand, he was asked on cross-examination: "Q. I will ask you if it isn't true that at that time and place when Mr. Galinsky was present, I will ask you if it isn't true that Mr. Galinsky said, in substance, to Mr. Carpenter and in your presence, 'What are you going to do about this?' and that Carpenter said he didn't know what he could do, and that Mr. Galinsky said to him, 'Well now, I want you to understand one thing, we are not going to let this boy,' referring to you, 'go to the penitentiary with all the money we have got.' I will ask you if it isn't true that that was said at that time

between Mr. Carpenter and Mr. Galinsky in your presence?" and his answer was, "No, sir; that is a lie."

Carpenter was placed upon the stand in rebuttal, and testified over objection that Galinsky in Miller's presence had said: "Do you think that we are going to let this young fellow (referring to Herman Miller) go to the penitentiary with all the money we have got?" This was an attempted impeachment on an immaterial matter, as the majority opinion states, as well as on an incompetent matter. It seems to me the effect of this testimony would tend to prevent a jury from a calm and dispassionate consideration of the case. In the minds of some jurors it would arouse prejudice against defendant because of the insinuation that the wealth of his family would be used in some way to prevent his punishment. Other jurors with this evidence before them might hesitate in the light of such statement from a relative of the defendant to vote for acquittal for fear of suspicion attaching to them that they might have been wrongfully influenced. The paralyzing effect of such evidence upon a fair trial, it seems to me, is quite evident. Its admission was a grave, substantial and prejudicial error. Section 269 of the Judicial Code admonishes appellate courts to give judgment after an examination of the entire record before the court without regard to technical errors which do no affect the substantial rights of the parties. This was not a technical error. In my judgment it clearly affected the substantial rights of defendant. The case was carefully tried by the learned District Court, and I find myself in entire agreement with the opinion of the majority, except as to this one question. The conceded error, it seems to me, is so serious and prejudicial as to require a reversal of this case.